ANDERSON, ADMR., Appellant,

v.

ST. FRANCIS–ST. GEORGE HOSPITAL, Appellee.

[Cite as *Anderson v. St. Francis–St. George Hosp.* (1992), 83 Ohio App.3d 221.]

Court of Appeals of Ohio,
Hamilton County.

No. C–910574.

Decided Nov. 18, 1992.

*William C. Knapp,* for appellant.

*Dinsmore & Shohl, Deborah R. Lydon, John E. Schlosser* and *Sara Simrall Rorer,* for appellee.

SHANNON, Presiding Judge.

Plaintiff-appellant, Keith Anderson, Esq., the administrator of the estate of Edward H. Winter, takes this appeal from the summary judgment entered against him in the Hamilton County Court of Common Pleas. In that court, appellant sued defendant-appellee, St. Francis–St. George Hospital ("SFSG"), claiming that it was liable for harm to Winter during his hospital stay at SFSG. Appellant advanced alternative, nonexclusive legal theories: battery, negligence, and "wrongful living." In the course of lengthy pretrial proceedings, SFSG made a motion for summary judgment on two grounds. SFSG's first assertion was that appellant had not stated a claim on which relief could be granted. In the

alternative, SFSG claimed that even if appellant had stated viable causes of action, there were no genuine issues of material fact remaining in the case. The trial court agreed with SFSG and granted summary judgment. On appeal, in a single assignment of error, appellant advances an umbrella claim—that is, the trial court erred by holding that, in Ohio, there is no cause of action for wrongful administration of life-prolonging medical treatment. For the reasons that follow, we affirm the judgment of the trial court in part, reverse in part, and remand for further proceedings.

In appellant's original November 17, 1989 complaint, he alleged that on May 25, 1988, Winter was admitted to SFSG suffering chest pain. After initial treatment in the emergency room, Winter was given additional care in the hospital's coronary unit. Appellant further alleged that Winter had a discussion with his family and his private physician, Dr. Russo, about the type of treatment that he was to receive while at SFSG. In addition, there is evidence to show that as a result of that discussion, Dr. Russo entered the instruction in the hospital record: "No Code Blue." In his complaint, appellant claimed that the no-code-blue entry indicated that Dr. Russo specifically instructed that Winter not be resuscitated.

On May 28, 1988, during Winter's subsequent treatment at SFSG, he suffered a ventricular fibrillation. Appellant alleged that, despite Dr. Russo's instructions, a nurse resuscitated Winter by shocking his heart with an electric current. Appellant further maintained that the nurse's resuscitation prevented Winter's natural death. Appellant claimed that the nurse's act of resuscitation was a battery to Winter. Appellant also asserted that the nurse was negligent by resuscitating Winter contrary to Dr. Russo's orders. Finally, appellant maintained that, by keeping Winter alive, SFSG caused him "great pain, suffering, emotional distress and disability" as well as medical and other financial expenses.

Civ.R. 56(C) provides that a motion for summary judgment shall be granted when the "pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact * * * show that there is no genuine issue as to any material fact."

▮▮ When a party makes a motion for summary judgment, that person bears the burden of showing that there is no genuine issue of a material fact. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 114, 526 N.E.2d 798, 801. To meet that burden, the moving party need not actually present evidence that no dispute remains, it must merely point out that no evidence has been produced to support the nonmoving party's claim. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 324, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265, 274 (adopted by the Ohio Supreme Court in *Wing v. Anchor Media, Ltd. of Texas* [1991], 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus). By way of contrast, for the nonmoving party to escape a summary judgment, it must produce some evidence that a dispute

remains on a material fact of the case. *Wing, supra,* at 111, 570 N.E.2d at 1099. The trial court does not decide the truth of any disputed matter; however, if there is a genuine issue of a material fact, it should not grant a motion for summary judgment. *Mitseff, supra,* 38 Ohio St.3d at 116, 526 N.E.2d at 802.

■ A motion for summary judgment may also be used as a substitute for Civ.R. 12(B)(6) to dismiss a claim on which relief cannot be granted. *Watkins v. Teater* (1983), 11 Ohio App.3d 103, 106, 11 OBR 156, 159, 463 N.E.2d 407, 410. When Civ.R. 56(C) is used as a Civ.R. 12(B)(6) substitute, the court will not determine if there are facts in dispute. Instead, the court will determine if there is any set of facts that the plaintiff could prove that would entitle him to relief. *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42·Ohio St.2d 242, 245, 71 O.O.2d 223, 224, 327 N.E.2d 753, 755. The court will grant the motion only if proof of the allegations in the complaint would still not entitle plaintiff to recovery. *Id.,* syllabus.

■ Concerning the substantive law of this dispute, the rule is that a person commits a battery when he unlawfully strikes or touches another. *Green v. Drungold* (1950), 60 Ohio Law Abs. 445, 447, 101 N.E.2d 906, 908. In a medical setting, when a physician treats a person without consent, the doctor has committed a battery. *Leach v. Shapiro* (1984), 13 Ohio App.3d 393, 395, 13 OBR 477, 479, 469 N.E.2d 1047, 1051. Moreover, under the doctrine of *respondeat superior,* any person who controls the physician in a principal-agent relationship is liable for unlawful acts by the physician that are within the scope of that relationship. *Klema v. St. Elizabeth's Hosp.* (1960), 170 Ohio St. 519, 527, 11 O.O.2d 326, 330, 166 N.E.2d 765, 771.

■ In contrast, a physician's acts are lawful when the patient expressly consents prior to medical treatment. *Leach, supra,* 13 Ohio App.3d at 395, 13 OBR at 479, 469 N.E.2d at 1051. Medical treatment also will be lawful under the doctrine of implied consent when a medical emergency requires immediate action to preserve the health or life of the patient. *Leach, supra,* 13 Ohio App.3d at 395, 13 OBR at 479, 469 N.E.2d at 1052, citing *Wells v. Van Nort* (1919), 100 Ohio St. 101, 125 N.E. 910. A potential patient may, however, expressly refuse treatment. *Leach, supra,* 13 Ohio App.3d at 397, 13 OBR at 481, 469 N.E.2d at 1053. If so, even in an emergency, any medical treatment is a battery. *Id.* at 396, 13 OBR at 480, 469 N.E.2d at 1052.

■ In this case, disputed questions of fact remain concerning a potential battery to appellant's decedent. The finder of fact must make a determination on the issue of consent. There is evidence that decedent expressly refused treatment in a code-blue situation. Also, there is evidence that defibrillation was within the ambit of Dr. Russo's no-code-blue instruction. Therefore, a trier of

fact must determine both the existence and nature of decedent's refusal. *Leach, supra,* 13 Ohio App.3d at 397, 13 OBR at 481, 469 N.E.2d at 1053. If decedent's instructions specifically precluded the treatment given, SFSG committed a battery. *Id.*

To determine the extent of possible legal liability in a battery, the trier of fact must determine what harm was proximately caused by the defendant's wrongful act. In intentional torts, such as battery, the defendant is liable for all harms that are proximately caused by the wrongful act. *Allstate Fire Ins. Co. v. Singler* (1968), 14 Ohio St.2d 27, 43 O.O.2d 43, 236 N.E.2d 79, syllabus (trespasser as intentional tortfeasor liable for all proximately caused harm). Later harms are proximately caused by the wrongful act if, first, they are part of a natural unbroken sequence resulting from the act, *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 287, 21 O.O.3d 177, 180, 423 N.E.2d 467, 469, and, second, if there is no superseding event that caused the harms, *Cascone v. Herb Kay Co.* (1983), 6 Ohio St.3d 155, 6 OBR 209, 451 N.E.2d 815, paragraph one of the syllabus, and fn. 1.

That later event is a superseding cause if it is not reasonably foreseeable. *Id.* In contrast, if the later cause were a "probable consequence" that was "set in motion" by the original wrongful act, it is reasonably foreseeable and not a superseding cause. *Mudrich v. Standard Oil Co.* (1950), 153 Ohio St. 31, 38–39, 41 O.O. 117, 120–121, 90 N.E.2d 859, 863; *Mouse v. Cent. Savings & Trust Co.* (1929), 120 Ohio St. 599, 606, 167 N.E. 868, 870.

For instance, if a delivery person negligently spills gasoline on the ground near a service station, that wrongdoer is liable for all proximately caused harm that results from the original act. *Mudrich, supra,* 153 Ohio St. at 37–38, 41 O.O. at 120–121, 90 N.E.2d at 863. Subsequent to the delivery person's negligence, if a child lights the pools of gasoline with a match, the second act also will be a cause of later harm. *Id.* at 38, 41 O.O. at 120, 90 N.E.2d at 863 (multiple causes for single injury). Moreover, the child's act may become a superseding cause of later harm. *Id.; Cascone, supra,* 6 Ohio St.3d at 159, 6 OBR at 212, 451 N.E.2d at 819. The act of lighting matches is a "new and independent cause" that supersedes the original act if it is not a foreseeable consequence of the first negligent act. *Mudrich, supra,* 153 Ohio St. at 39, 41 O.O. at 121, 90 N.E.2d at 863; see, also, *Strother, supra,* 67 Ohio St.2d at 288, 21 O.O.3d at 181, 423 N.E.2d at 471 (later foreseeable consequence is not superseding).

In this case, the record shows that decedent had damages after the defibrillation. Specifically, appellant claims that those damages were a paralyzing stroke as well as pain, suffering, emotional distress and disability, and medical expenses. Therefore, another genuine issue of material fact remains for the jury. That

question is: If the defendant committed a battery, were the decedent's later harms proximately caused by the original wrongful act?

The next issue concerns which of the proximately caused harms are compensable. In appellant's assignment of error, he claims that decedent's life was prolonged by the defibrillation, but that life "was, *for him,* not worth living." Appellant "coins" a name for the cause of action for the life that was forced on decedent by the resuscitation—"wrongful living." Brief for appellant, at 8, citing Oddi, The Tort of Interference with the Right to Die: The Wrongful Living Cause of Action (1986), 75 Geo.L.J. 625. This rather novel notion has not been addressed directly in Ohio courts. Nonetheless, it is possible to determine that life is not a compensable harm; therefore, there is no cause of action for wrongful living.

First, the Ohio Supreme Court has declined to consider the lack of life to be a possible benefit. *Bowman v. Davis* (1976), 48 Ohio St.2d 41, 45, 2 O.O.3d 133, 135, 356 N.E.2d 496, 499. Similarly, the court has noted with disapproval the wrongful-life cause of action for children of negligently sterilized mothers, which measures "damages on the relative merits of *being versus nonbeing.*" (Emphasis added.) *Id.* and fn. 3. Finally, the Ohio Supreme Court has referred to the joy of life as an "intangible benefit" that can not be valued monetarily. *Johnson v. Univ. Hosp. of Cleveland* (1989), 44 Ohio St.3d 49, 55, 540 N.E.2d 1370, 1375.

Damages, therefore, are not those things that add to life, but those that subtract from it. Examples of compensable damages are: wrongful death, R.C. 2125.01; unlawful shortening of a person's life, *Lopresti v. Traction Co.* (1954), 160 Ohio St. 480, 52 O.O. 359, 117 N.E.2d 2; general physical injuries, *Sherer v. Smith* (1951), 155 Ohio St. 567, 571, 44 O.O. 506, 509, 99 N.E.2d 763, 764; loss of the use of a limb, *Richards v. St. Thomas Hosp.* (1986), 24 Ohio St.3d 27, 24 OBR 71, 492 N.E.2d 821; emotional harm caused by another's negligence, *Shultz v. Barberton Glass Co.* (1983), 4 Ohio St.3d 131, 4 OBR 376, 447 N.E.2d 109.

Even though life is not a harm, appellant, nevertheless, claims that Ohio "specifically recognizes" that patients should be compensated for wrongful living. Brief for appellant at 4. In Ohio, it is the role of the Supreme Court or the General Assembly to create new causes of action. See, generally, *High v. Howard* (1992), 64 Ohio St.3d 82, 592 N.E.2d 818 (no new cause of action for child's loss of consortium after intentional or negligent injury to parent). Nonetheless, appellant draws on the dicta of two lines of Ohio cases in an attempt to create a wrongful-living cause of action.

First, appellant develops an analogy to *Leach.* In *Leach,* against her prior express wishes, a patient in a chronic vegetative state was placed on life-support systems. *Id.,* 13 Ohio App.3d at 396, 13 OBR at 481, 469 N.E.2d at 1051. The court held that the plaintiff had a good cause of action for the nonconsensual

medical treatment. *Id.* at 395, 13 OBR at 479, 469 N.E.2d at 1051. There was no need, however, to coin a cause of action for the wrongful act. The court held that a "physician who treats a patient without consent commits a battery." *Id.* at 395, 13 OBR at 479, 469 N.E.2d 1051, citing *Lacey v. Laird* (1956), 166 Ohio St. 12, 1 O.O.2d 158, 139 N.E.2d 25. Under *Leach,* therefore, there is no wrongful-living cause of action.

Appellant also relies on two sterilization cases in an effort to create an Ohio wrongful-living cause of action. *Bowman v. Davis* (1976), 48 Ohio St.2d 41, 2 O.O.3d 133, 356 N.E.2d 496; *Johnson v. Univ. Hosp. of Cleveland* (1989), 44 Ohio St.3d 49, 540 N.E.2d 1370. In *Bowman* and *Johnson,* physicians, in two separate circumstances, attempted to perform surgical operations to sterilize women and eliminate their possible future pregnancies. *Bowman, supra,* 48 Ohio St.2d at 42, 2 O.O.3d at 133, 356 N.E.2d at 497; *Johnson, supra,* 44 Ohio St.3d at 49, 540 N.E.2d at 1370. Nevertheless, in both cases, because the physicians negligently performed the operations, the patients became pregnant. In these cases, the court did recognize a cause of action within the traditional negligence framework—wrongful pregnancy. *Bowman, supra,* 48 Ohio St.2d at 50, 2 O.O.3d at 136, 356 N.E.2d at 499; *Johnson, supra,* at paragraphs one and two of the syllabus.

Appellant's attempt to create a wrongful-living cause of action fails because life is not a compensable harm. Furthermore, appellant's effort to weave a wrongful-living claim from dicta is misplaced. Our role is not to create causes of action. That responsibility lies with either the General Assembly or the Ohio Supreme Court. Because none of the cases that appellant cites even mentions wrongful living, we do not recognize his claim. For that reason, even if appellant were to prove all allegations in his complaint, under Civ.R. 12(B)(6), his wrongful-living claim is one on which relief cannot be granted. Therefore, the trial court correctly dismissed that portion of appellant's complaint.

▮ Even though a victim must have some legally recognized harm to recover actual damages, nonconsensual medical treatment that prolongs a person's life may still be a battery. Therefore, as in any battery, the plaintiff is entitled to some relief. When, however, the nonconsensual treatment is harmless or beneficial, damages for the wrongful act are nominal only, not actual. *Lacey, supra,* 166 Ohio St. at 12, 1 O.O.2d at 158, 139 N.E.2d at 26 paragraph two of the syllabus.

Genuine issues of material fact remain concerning the possible battery of appellant's decedent. Therefore, under Civ.R. 56(C), the trial court erred by granting a summary judgment on that portion of this case.

▮ With respect to appellant's remaining theory of recovery, a person commits a negligent tort when he has a duty to another, breaches that duty, the

breach proximately causes harm to the victim, and the harm is compensable. *Strother, supra,* 67 Ohio St.2d at 285, 21 O.O.3d at 179, 423 N.E.2d at 469 (duty, breach, cause); *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 375, 6 OBR 421, 426, 453 N.E.2d 666, 671 (compensable harm: no liability for mere insults or indignities). Here, because the nurse who performed the resuscitation was an employee of SFSG at that time, as a matter of law, SFSG had a duty to the decedent. *Klema, supra,* 170 Ohio St. at 527, 11 O.O.2d at 330, 166 N.E.2d at 771.

There are, however, questions of fact concerning the possible breach of that duty. There is evidence in the record that indicates that decedent requested limitations on his care while at SFSG. There is also evidence that decedent's private physician ordered that decedent not be resuscitated. Also, there is evidence that either SFSG or the nurse, or both, were negligent in preventing or causing the nonconsensual treatment. Therefore, two issues remain for the trier of fact: first, whether the defibrillation was precluded by the no-code-blue instruction; second, if the defibrillation was within the ambit of the instruction, whether either SFSG or the attending nurse was negligent by resuscitating decedent.

If the trier of fact determines that either SFSG or the nurse breached a duty to decedent, just as in battery, the appellant must prove that later harms were proximately caused by the negligent act. In addition, if there were proximately caused harms, the court should allow compensation only for damages that are recognized by Ohio law. In contrast to battery, however, if the court finds negligence, but no compensable harm, it should not allow nominal damages. *Craig v. Chambers* (1867), 17 Ohio St. 254, syllabus; *Younce v. Baker* (1966), 9 Ohio App.2d 259, 38 O.O.2d 316, 224 N.E.2d 144.

In this case, genuine issues remain on the question of defendant's negligence. Therefore, the trial court erred by granting summary judgment on that portion of the case.

For the reasons stated, we affirm the trial court's judgment dismissing the cause of action for wrongful living. For the issues remaining in both battery and negligence, however, we remand the case to the trial court for further proceedings in accordance with the reasoning of this decision.

*Judgment accordingly.*

KLUSMEIER and UTZ, JJ., concur.