ANDERSON, ADMR., APPELLEE, *v.* ST. FRANCIS–
ST. GEORGE HOSPITAL, INC., APPELLANT.

[Cite as *Anderson v. St. Francis–St. George
Hosp., Inc.* (1996), 77 Ohio St.3d 82.]

(No. 95–869—Submitted May 7, 1996—Decided October 10, 1996.)

*William C. Knapp,* for appellee.

*Dinsmore & Shohl, Deborah R. Lydon, June Smith Tyler* and *Sara Simrall Rorer,* for appellant.

*Bricker & Eckler, James J. Hughes, Jr.* and *Catherine M. Ballard,* urging reversal for *amici curiae,* Ohio Hospital Association and Ohio State Medical Association.

MOYER, C.J.   We are presented with the following question: Where a medical provider administers a life-prolonging treatment or procedure to a patient against the patient's instructions, is the medical provider liable for all foreseeable consequential damages resulting from the treatment or procedure?  This is a case of first impression, and presents this court with the issues raised by a claim of "wrongful living."  In its simplest form, the question becomes: Is "continued living" a compensable injury?

American jurisprudence has developed at least three civil actions relating to the beginning and the extension of life: "wrongful life," "wrongful birth" and "wrongful living."  Generally, a claim for "wrongful life" is brought by a child seeking damages against a physician or hospital for negligently failing to properly sterilize the parent.  See *Bowman v. Davis* (1976), 48 Ohio St.2d 41, 45, 2 O.O.3d 133, 135, 356 N.E.2d 496, 499, fn. 3.

A "wrongful birth" action is a claim brought by the parents of an impaired child seeking to recover damages for the birth of the child.  The parents claim that due to the negligence of the physician, they were prevented from exercising

their right to terminate the pregnancy or avoid conception altogether. See *Johnson v. Univ. Hospitals of Cleveland* (1989), 44 Ohio St.3d 49, 51, 540 N.E.2d 1370, 1372.

In a claim for "wrongful living," which is the basis for recovery in this case, the plaintiff does not assert a claim based on a life coming into being. Rather, the plaintiff asserts a right to enforce an informed, competent decision to reject live-saving treatment. This claim is inextricably linked to, and arises directly out of, the right to die recognized in *Cruzan v. Director, Missouri Dept. of Health* (1990), 497 U.S. 261, 110 S.Ct. 2841, 111 L.Ed.2d 224. Thus, in a "wrongful living" action, the plaintiff is asserting a liberty interest in refusing unwanted medical treatment. It is the denial of this liberty interest, when the medical professional either negligently or intentionally disregards the express wishes of a patient, that gives rise to the wrongful living cause of action.

Some form of valuation of life pervades the legal issue in all three of the causes of action. In reality, a claim of wrongful living is a *damages* concept, just as a claim for "wrongful whiplash" or "wrongful broken arm," and must necessarily involve an underlying claim of negligence or battery. A negligence claim requires proof of the following elements: duty, breach of duty, causation, and damages. *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 15 OBR 179, 472 N.E.2d 707. A battery claim, while sharing the elements of causation and damages, does not require the proving of a duty and a breach of that duty, but rather an intentional, unconsented-to touching. *Love v. Port Clinton* (1988), 37 Ohio St.3d 98, 524 N.E.2d 166. Under both claims, a defendant is liable only for harms that are proximately caused by the tortious act. It is the defining of the harm giving rise to damages that is uniquely difficult in a claim of "wrongful living."

Because a person has a right to die, a medical professional who has been trained to preserve life, and who has taken an oath to do so, is relieved of that duty and is required by a legal duty to accede to a patient's express refusal of medical treatment. Whether intentional or negligent, interference with a person's legal right to die would constitute a breach of that duty to honor the wishes of the patient.

Where a breach of duty has occurred, liability will not attach unless there is a causal connection between the conduct of the medical professional and the loss suffered by the patient.

The standard test for establishing causation is the *sine qua non* or "but for" test. Thus, a defendant's conduct is a cause of the event (or harm) if the event (or harm) would not have occurred *but for* that conduct; conversely, the defendant's conduct is not the cause of the event (or harm) if the event (or harm) would

have occurred regardless of the conduct. Prosser & Keeton, Law of Torts (5 Ed.1984) 266.

For purposes of a "wrongful living" cause of action, the event or loss for which the plaintiff seeks damages is neither death nor life, but *the prolongation of life*. Thus, once it is established that but for the conduct of the medical professional, death would have resulted, the causation element of a "wrongful living" claim is satisfied.

Assuming that the plaintiff can show a duty, breach of the duty, and proximate cause between the breach and the prolongation of life, the difficult issue is what damages flow from the "harm" caused the plaintiff. There is perhaps no issue that better demonstrates the outer bounds of liability in the American civil justice system than this issue.

This court has recognized "the impossibility of a jury placing a price tag" on the benefit of life. *Johnson, supra,* 44 Ohio St.3d at 58, 540 N.E.2d at 1378. We have also disapproved of awarding damages on the relative merits of "being versus nonbeing." *Bowman, supra,* 48 Ohio St.2d at 45, 2 O.O.3d at 135, 356 N.E.2d at 499, fn. 3. These views are consistent with the views expressed by the courts of other states. *Cockrum v. Baumgartner* (1983), 95 Ill.2d 193, 201, 69 Ill.Dec. 168, 172, 447 N.E.2d 385, 389 (finding that human life cannot be a compensable harm, and stating that "the benefit of life should not be outweighed by the expense of supporting it"); *Becker v. Schwartz* (1978), 46 N.Y.2d 401, 412, 413 N.Y.S.2d 895, 900, 386 N.E.2d 807, 812 (finding courts not equipped to handle the task of comparing the value of life in an impaired state and nonexistence); *Lininger v. Eisenbaum* (Colo.1988), 764 P.2d 1202, 1212 (concluding that "life, however impaired and regardless of any attendant expenses, cannot rationally be said to be a detriment" when compared to the alternative of nonexistence).

In Winter's first appeal, the court of appeals properly concluded that there is no cause of action for "wrongful living" and remanded for a determination of several issues related to traditional negligence and battery. 83 Ohio App.3d 221, 614 N.E.2d 841. In the second appeal, the court held that a patient may recover damages based upon the torts of negligence or battery *for all the foreseeable consequences of the therapy,* including the pain, suffering, and emotional distress beyond that which he normally would have suffered *had the therapy not been initiated.* The record clearly indicates that Winter would have died on May 30, 1988, without the defibrillation and, consequently, would not have suffered any subsequent medical conditions. Thus, the court of appeals' theory of recovery seems to be identical to the theory of recovery underlying a claim of "wrongful living." Both the law of the case and our holding here make this theory untenable, and damages, if any, must be based strictly on the theories of negligence or battery.

There are some mistakes, indeed even breaches of duty or technical assaults, that people make in this life that affect the lives of others for which there simply should be no monetary compensation. See *Heiner v. Moretuzzo* (1995), 73 Ohio St.3d 80, 88, 652 N.E.2d 664, 670 (affirming that "not every wrong is deserving of a legal remedy").

Winter's estate now argues that it is not asserting a "wrongful living" claim. Rather, it argues that it is entitled to damages for the stroke suffered by Winter on May 30, 1988, and any injuries, other than continued living, that were the foreseeable results of the "wrongful" resuscitation of Winter. We find this argument to be without merit.

As we have observed, *supra*, the standard test for establishing causation is the "but for" test. "As a rule regarding legal responsibility, at most this must be a rule of exclusion: if the event would not have occurred 'but for' the defendant's negligence, it still does not follow that there is liability, since other considerations remain to be discussed and may prevent liability. It should be quite obvious that, once events are set in motion, there is, in terms of causation alone, no place to stop." (Footnote omitted.) Prosser, *supra*, at 266. Accordingly, an act is not regarded as a cause of an event if the particular event would have occurred without the doing of the act. *Id.* at 265.

This is the essential point that Anderson avoids. Edward Winter was eighty-two years old with a history of cardiac problems. The record indicates that a stroke was reasonably foreseeable if Winter survived the ventricular tachycardia he suffered on May 28, 1988. However, the record is devoid of any evidence that the administering of the resuscitative measures caused the stroke. Winter suffered the stroke because the nurse enabled him to survive the ventricular tachycardia. Because the nurse prolonged Winter's life, numerous injuries occurring after resuscitation might be foreseeable, but would not be caused by the defibrillation.

The record supports our conclusion. Anderson never presented any evidence that the defibrillation itself caused or contributed to Winter's suffering a stroke in any way *other than by simply prolonging his life*. When Anderson's expert witness, Dr. Finley, was asked for his opinion regarding the cause of Winter's stroke, he testified that:

"I think that, in this clinical circumstance, it is more likely than not related to his acute cardiac event, and that in all probability, given that he was elderly, he had known peripheral vascular and presumably some cerebral vascular disease, that it was very likely connected with his continued rhythm disturbance, and being off the monitor, there really would be no evidence to that effect, but it is either a spontaneous, completely unrelated cerebral accident, or it is related to his presentation in his hospital course. Given the fairly complicated presentation,

I think it is infinitely more likely to be related to the events that were occurring [*i.e.*, heart arrhythmias] rather than a second, unrelated event." In addition, in his 1993 memorandum opposing jurisdiction, Anderson stated to this court that:

"It has never been Plaintiff's position that the resuscitation caused the stroke. Plaintiff's expert will only testify that a stroke is one of the recognized sequelae of sustained ventricular tachycardia and, that if a patient with this medical problem survives the episode, either through spontaneous recovery or resuscitation, the risk can become a reality."

The only damages that appellee may recover are those damages suffered by Winter due directly to the battery. Where the battery was physically harmless, however, the plaintiff is entitled to nominal damages only. *Lacey v. Laird* (1956), 166 Ohio St. 12, 1 O.O.2d 158, 139 N.E.2d 25, paragraphs one and two of the syllabus.

We also observe that unwanted life-saving treatment does not go undeterred. Where a patient clearly delimits the medical measures he or she is willing to undergo, and a health care provider disregards such instructions, the consequences for that breach would include the damages arising from any battery inflicted on the patient, as well as appropriate licensing sanctions against the medical professionals.

In the present case, Winter suffered no damages as a result of the defibrillation of his heart, *i.e.*, no tissue burns or broken bones. Anderson concedes that he is not seeking nominal damages. There is no issue to be decided by the trial court upon remand. Therefore, we reverse the judgment of the court of appeals and enter judgment for appellant.

*Judgment reversed.*

F.E. SWEENEY and COOK, JJ., concur.

DOUGLAS, J., concurs in judgment.

RESNICK, PFEIFER and BOWMAN, JJ., dissent.

DONNA BOWMAN, J., of the Tenth Appellate District, sitting for STRATTON, J.

DOUGLAS, J., concurring. I concur with the judgment of the majority. Doctors, hospitals and their staffs are in the business of saving lives. Short of ignoring a living will (R.C. 2133.01 *et seq.*) or a durable power of attorney for health care (R.C. 1337.11 *et seq.*), medical professionals should not be subjected to liability for carrying out the very mission for which they have been trained and for which they have taken an oath. Maybe such cases as the one before us should be denominated "furthering life" rather than "wrongful living." Applying the posi-

tive connotation to an act which continues life, where death would have occurred without intervention, what damage could possibly ensue?

The only measure we have in the civil law to compensate a person injured by the wrongful act of another is "damages." Assuming, for purposes of argument only, that the action of the hospital through its staff was negligence and, assuming further, that "damages" should be assessed as a result of the negligence, how would they be computed? Can the preservation of life (furthering life) even be amenable to the "damages" concept? I think not!

Writing for the majority of the court in *Johnson v. Univ. Hospitals of Cleveland* (1989), 44 Ohio St.3d 49, 58, 540 N.E.2d 1370, 1378, I said:

"[W]e are not persuaded to adopt the full recovery rule because the strict rules of tort should not be applied to an action to which they are not suited, such as a wrongful pregnancy case [and wrongful life or furthering life], in which a doctor's tortious conduct permits to occur the birth of a child [or continued life] rather than the causing of an injury."

Even assuming the hospital, acting through its employees, engaged in tortious conduct, a premise I do not accept, there could be no resulting damage for seeing to it that a life was preserved. I believe *Johnson* is entirely dispositive of this case. In addition, as I said, again writing for a majority of the court, in *Heiner v. Moretuzzo* (1995), 73 Ohio St.3d 80, 88, 652 N.E.2d 664, 670, if the hospital through its staff was negligent, "the facts of this case remind us that not every wrong is deserving of a legal remedy."

Accordingly, I concur in judgment.

PFEIFER, J., dissenting. Winter told his doctor that he did not wish to be subjected to certain medical treatment, as was his constitutional right. See *Cruzan v. Director, Missouri Dept. of Health* (1990), 497 U.S. 261, 110 S.Ct. 2841, 111 L.Ed.2d 224. Nevertheless, Winter's instructions were not followed, he was defibrillated, and subsequently suffered a stroke.

Anderson (the administrator of Winter's estate) should have been afforded an opportunity to prove that the hospital was negligent, that Winter's constitutional rights were violated, and that Winter suffered harm as a consequence. It is not certain that Anderson would have proven causation, but it was error to summarily foreclose the opportunity of proof. Medical experts were prepared to testify on behalf of the plaintiff that "it was medically foreseeable that he [Winter] would suffer a stroke during the days immediately following defibrillation." This statement strongly suggests that there was a factual dispute as to causation that ought to have survived summary judgment.

Contrary to the assertion of the majority opinion, the plaintiff was not seeking to recover because Winter's life was prolonged. He was seeking to recover

because the hospital staff failed to follow the instructions Winter had given them. He claimed that this negligence increased the likelihood that Winter would suffer a stroke. Not only did Winter suffer a stroke, he was incapacitated from that day until the day of his death. I respectfully dissent.

RESNICK and BOWMAN, JJ., concur in the foregoing dissenting opinion.