OPINION
{¶ 1} Plaintiff-appellant Alisa McNichols [hereinafter appellant] appeals the March 12, 2002, Judgment Entry of the Tuscarawas Court of Common Pleas. In that Judgment Entry, the trial court found that appellant had failed to prove civil claims brought against defendant-appellee Brian Rennicker [hereinafter appellee].
 STATEMENT OF THE FACTS AND CASE {¶ 2} On January 17, 2001, appellant filed a civil complaint in the Tuscarawas County Court of Common Pleas. In the complaint, appellant brought claims for civil assault, civil battery and intentional infliction of emotional distress and claims pursuant to R.C. 2307.60. Appellant's claims brought pursuant to R.C. 2307.60 were based upon allegations that appellee committed menacing by stalking and telephone harassment. Appellee filed a counterclaim claiming civil assault and false accusations resulting in lost wages and humiliation.
 {¶ 3} A civil trial was held on January 27, 2002. At the trial, appellant testified that she and appellee had a personal relationship that was often times troubled. According to appellant, on March 30, 2000, appellee entered appellant's apartment without permission and an argument ensued. Appellant testified that, despite being told to leave, appellee did not leave and started throwing appellant's things around. Appellant admitted that, at that point, she hit appellee. Appellant claimed that appellee then hit her in the face and threw her to the floor. Appellant claimed that when she fell to the floor, her elbow was injured. Appellant underwent multiple surgeries and incurred medical bills.
Appellant also testified that even though she told appellee not to call her, appellee began to call her after she was released from the hospital. Appellant testified that sometimes appellee would not say anything, but other times appellee would speak to appellant. Appellant testified that she asked appellee to stop calling and ultimately filed a police report.
 {¶ 4} Appellant testified that she had sought and obtained a civil protection order [hereinafter CPO] against appellee in a different case. In granting the CPO, the trial court held, in relevant part, that appellee had made multiple hang up phone calls to appellant and that appellee "knowingly engaged in a pattern of conduct designed to cause [appellant] to believe that he will cause physical harm to [appellant] or cause mental distress to [appellant]." CPO, para. 10. The trial court also found that appellant "is very fearful of [appellee] since the 3/30/00 incident. The repeated pattern of phone calls and unwanted contacts have caused mental distress to [appellant]." Id. As to allegations regarding injuries to appellant's elbow, the trial court made no definite findings as to how the injury occurred, noting that the parties had differing versions of what happened. Id. at para. 3. Appellant entered the CPO into evidence.
 {¶ 5} Appellee testified, providing a different account of events. Appellee admitted he was in appellant's apartment on the date in question. However, appellee claimed that it was appellant who hit appellee. Appellee stated that through appellant's assault of appellee, appellant caused her own injury to her elbow.
 {¶ 6} After the bench trial, the trial court issued a decision on March 12, 2002. The trial court found that appellant had failed to prove her claims and found that appellee had failed to prove his counterclaims.
 {¶ 7} It is from the March 12, 2002, Judgment Entry that appellant appeals, raising the following assignment of error:
"The trial court erred in finding that Plaintiff had failed to prove her claims by a preponderance of the evidence."
 {¶ 8} In the sole assignment of error, appellant contends that the trial court erred when it found that appellant failed to prove her civil claims by a preponderance of the evidence. We disagree.
 {¶ 9} We will first consider appellant's argument that the record supports appellant's claims for civil battery and civil assault. Appellant contends that the record demonstrates that appellee committed civil battery against appellant on March 30, 2000, when appellee caused appellant to suffer a fractured arm. Appellant contends that the record also demonstrates that appellee committed civil assault against appellant based upon appellant's testimony at trial in which she testified that appellee's aggressive and hostile conduct in appellant's home caused her to fear for her safety.
 {¶ 10} In essence, appellant raises manifest weight of the evidence issues. A judgment supported by competent and credible evidence going to all the elements of the case must not be reversed, by a reviewing court as being against the manifest weight of the evidence. Masitto v. Masitto (1986), 22 Ohio St.3d 63, 488 N.E.2d 857.
The tort of battery consists of an "intentional, unconsented-to touching." Anderson v. St. Francis-St. George Hosp., Inc. (1996),77 Ohio St.3d 82, 83, 671 N.E.2d 225; See also Love v. City of Port Clinton (1988), 37 Ohio St.3d 98, 99, 524 N.E.2d 166. The tort of assault consists of "the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact. The threat or attempt must be coupled with a definitive act by one who has the apparent ability to do the harm or to commit the offensive touching." Smith v. John Deere Co. (1993),83 Ohio App.3d 398, 406, 614 N.E.2d 1148.
 {¶ 11} There is competent and credible evidence to support the trial court's conclusion that appellee was not civilly liable for civil assault and civil battery. Appellee testified that it was appellant that was caustic and abusive that day. Appellee testified that appellant kneed him in the head. Then, at a later point, as appellee left appellant's apartment, appellant threw a full pop can at appellee's head, hitting appellee in the head. Appellant's second attempt to throw the pop can at appellee resulted in pop on the floor and appellant slipping in the pop. Appellee testified that appellant injured her elbow when she slipped in the pop. Appellee denied causing appellant's injury and denied being aggressive and hostile. We find that there was competent, credible evidence upon which the trial court could rely to find that appellee had not committed civil assault or civil battery.
 {¶ 12} We note that appellant and appellee presented conflicting accounts of the events of March 30, 2000. The Ohio Supreme Court has held that the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact, and an appellate court may not substitute its judgment for that of the fact finder. State v. Awan (1986), 22 Ohio St.3d 120, 123, 489 N.E.2d 277. The fact finder is free to believe all, part, or some of the testimony of each witness. State v. Caldwell (1992), 79 Ohio App.3d 667, 679, 607 N.E.2d 1096. The trial court apparently believed appellee's account of the events on March 30, 2000.
Appellant also argues that the record supports appellant's claims for menacing by stalking[1] and telephone harassment.[2] Appellant brought these claims pursuant to R.C. 2307.60.[3] First, appellant argues that the doctrine of collateral estoppel prevents appellee from re-litigating whether appellee engaged in menacing by stalking and telephone harassment since the factual findings made in the Judgment Entry which granted appellant a CPO against appellee included findings of menacing by stalking and telephone harassment. Second, appellant argues that even if collateral estoppel is not applied, the evidence at trial supported a finding that appellee violated the criminal statutes prohibiting menacing by stalking and telephone harassment.
 {¶ 13} We find that we do not reach the arguments raised by appellant. Appellant's civil claims were brought pursuant to R.C. 2307.60. Revised Code 2307.60 does not create a cause of action. Peterson v. Scott Construction Co. (1982), 5 Ohio App.3d 203, 204-205; 451 N.E.2d 1236. Edwards v. Madison Township (Nov. 25, 1997), Franklin App. No. 97APE06-819, 1997 WL 746415; Applegate v. Wedock (Nov. 30. 1995), Auglaize App. No. 2-95-24, 1995 WL 705214. "[Revised Code 2307.60] is only a codification of the common law in Ohio that a civil action is not merged in a criminal prosecution which arose from the same act or acts." Schmidt v. Statistics, Inc. (1978), 62 Ohio App.2d 48, 49, 403 N.E.2d 1026
(citing Story v. Hammond (1831), 4 Ohio 376, 378; Peterson v. Scott Constr. Co., supra). But, a separate civil cause of action must be available to bring a civil claim based upon a criminal act. Id. This court is unaware of a civil cause of action of "menacing by stalking" or "telephone harassment." Since no cause of action exists, there can be no recovery for appellant. In accord, Edwards, supra; Appelgate, supra. Therefore, appellant's arguments concerning 2307.60 are meritless.
 {¶ 14} Appellant's sole assignment of error is overruled.
 {¶ 15} The judgment of the Tuscarawas Court of Common Pleas is affirmed.
Judgment affirmed.
Hoffman, P.J. and Boggins, J. concur.
Re: Civil Assault battery
[1] "(A) No person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person. . . . (D) As used in this section: (1) "Pattern of conduct" means two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents. Actions or incidents that prevent, obstruct, or delay the performance by a public official, firefighter, rescuer, emergency medical services person, or emergency facility person of any authorized act within the public official's, firefighter's, rescuer's, emergency medical services person's, or emergency facility person's official capacity may constitute a "pattern of conduct." (2) "Mental distress" means any mental illness or condition that involves some temporary substantial incapacity or mental illness or condition that would normally require psychiatric treatment." R.C. 2903.211.
[2] "(A) No person shall knowingly make or cause to be made a telecommunication, or knowingly permit a telecommunication to be made from a telecommunications device under the person's control, to another, if the caller does any of the following: . . . (5) Knowingly makes the telecommunication to the recipient of the telecommunication, to another person at the premises to which the telecommunication is made, or to those premises, and the recipient or another person at those premises previously has told the caller not to make a telecommunication to those premises or to any persons at those premises.
"(B) No person shall make or cause to be made a telecommunication, or permit a telecommunication to be made from a telecommunications device under the person's control, with purpose to abuse, threaten, or harass another person." R.C. 2917.21, in relevant part.
"No person shall, while communicating with any other person over a telephone, threaten to do bodily harm or use or address to such other person any words or language of a lewd, lascivious, or indecent character, nature, or connotation for the sole purpose of annoying such other person; nor shall any person telephone any other person repeatedly or cause any person to be telephoned repeatedly for the sole purpose of harassing or molesting such other person or his family." R.C.4931.31.
[3] "Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code. R.C. 2307.60.