DECISION
{¶ 1} Plaintiff-appellant Christina Schwaller sued defendants-appellees Sean Maguire, M.D., Lawrence Kurtzman, M.D., and University Hospital, Inc.,[1] following mastopexy (breast lift) and liposuction procedures performed in May 1998. The trial court granted partial summary judgment in favor of Maguire and University Hospital on Schwaller's claims for lack of informed consent and battery, as well as on her request for punitive damages.[2] Kurtzman did not move for summary judgment.
 {¶ 2} The only issue that remained for trial against Maguire and University Hospital was negligence. Following the trial, the jury returned general verdicts in favor of Maguire, Kurtzman, and University. Schwaller now appeals. We affirm the judgment of the trial court.
1. Factual Background
 {¶ 3} In April 1998, Schwaller went to the Plastic Surgery Clinic at the University of Cincinnati to consult with Maguire about a possible breast-reduction procedure. At the time, Maguire was the chief resident of the clinic. Following her consultation with Maguire, Schwaller opted to have a breast-lift procedure performed, rather than a breast reduction. She also chose to have liposuction done on her thighs and hips.
 {¶ 4} Schwaller met with Kurtzman, an attending surgeon, and was aware that both he and Maguire would perform the procedures. Schwaller executed a written consent form for the procedures, indicating that she understood the risks inherent in them.
 {¶ 5} On May 8, 1998, Maguire and Kurtzman performed mastopexy and liposuction procedures on Schwaller. In the summer of 1998, Schwaller became dissatisfied with the results of the surgical procedures. She contacted an attorney and later learned through him that Maguire had a drug-abuse problem. In October 1999, she filed her malpractice claim against the defendants-appellees.
 {¶ 6} In her first assignment of error, Schwaller now argues that the trial court erred by granting summary judgment in favor of Maguire and University Hospital on her claim for battery. We note that Schwaller has appealed only the trial court's entry of summary judgment on her claim for battery and has not appealed the entry of summary judgment on her claim for lack of informed consent. Therefore, she has waived any error regarding the court's dismissal of her claim for lack of informed consent.[3]
 {¶ 7} Initially, Schwaller claims that the trial court erred by confusing the tort of battery with the tort of lack of informed consent. We find no support in the record for this contention. Moreover, because summary judgment presents only questions of law, this court reviews the record de novo.[4]
 {¶ 8} Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his or her favor.[5]
 {¶ 9} In this case, Schwaller's battery claim was based on the failure of the defendants-appellees to "obtain consent of sufficient legality to the act of being assessed and/or operated upon by a habituated and impaired physician." Schwaller argued that, as a result of her legally insufficient consent, the surgical procedures in this case constituted an intentional, nonconsensual touching.
 {¶ 10} Maguire had testified in a deposition that, in the winter of 1997, he had begun to abuse opiates, specifically prescription painkillers, for chronic neck pain. By the spring of 1998, Maguire had developed a dependence on the prescription painkillers, but he testified that he did not take them during the hours he was working or scheduled to work. He also testified that he had never experienced any type of "hangover" effect following his ingestion of the prescription painkillers. Nonetheless, Schwaller argues that Maguire's undisclosed drug problem negated her consent. We find no merit in this argument.
 {¶ 11} If a physician treats a patient without authorization or consent, the physician has committed a technical battery.[6] Examples of a battery in a medical setting include cases where a surgeon removes a portion of a patient's stomach without her consent,[7] where a surgeon uses an anesthetic specifically prohibited by the plaintiff,[8] and where a different surgeon than the one authorized by the plaintiff performs the procedure.[9] But a physician's acts are lawful if the patient has expressly consented to the medical treatment.[10] Where a plaintiff has consented to the medical treatment that is employed by a physician, and the plaintiff fails to present evidence that the physician's treatment was performed without consent or that the treatment exceeded his or her consent, there is a failure of proof on an essential element of battery.[11]
 {¶ 12} The only damages that a plaintiff may recover are those damages suffered directly as a result of the battery.[12] Where a battery is physically harmless or even beneficial, the plaintiff is entitled to nominal damages only.[13]
 {¶ 13} In this case, Schwaller executed a written consent form for the procedures, indicating that she understood the risks inherent in them, such as loss of blood, infection, and cardiac arrest. Schwaller also acknowledged that Maguire had explained to her additional risks associated with the breast lift and liposuction procedures, including the following: "[the] need for further surgery, loss of nipple sensitivity, wound healing problems, hematoma, [and] seroma." Additionally, Schwaller was aware that both Kurtzman and Maguire would perform the procedures. The record demonstrates that Maguire and Kurtzman were authorized by Schwaller to perform mastopexy and liposuction procedures, and those were the only procedures that the physicians performed upon her. Because there was no genuine issue of material fact with respect to Schwaller's consent to the procedures employed by Maguire and Kurtzman, the trial court properly entered summary judgment in favor of defendants-appellees on her claim for battery.
 {¶ 14} Even if we were to assume that the surgery in this case was performed without Schwaller's consent, Schwaller nonetheless failed to present evidence demonstrating that a genuine issue of material fact remained as to whether the defendants' conduct had proximately caused her harm. A negligence action and an action for battery differ in that while both causes of action require proof of causation and damages, a battery claim does not require proof of a duty and a breach of that duty.[14] A battery claim requires proof of an intentional, unconsented-to touching.[15] "To determine the extent of possible legal liability in a battery, the trier of fact must determine what harm was proximately caused by the defendant's wrongful act."[16] Under both negligence and battery claims, a defendant is liable only for harms that are proximately caused by the tortious act.[17]
 {¶ 15} In this case, Schwaller argued that she would not have undergone the procedures had she known that there might have been additional risks posed by the surgery as a result of her being a smoker, or that Maguire was a drug user. But Schwaller failed to present evidence demonstrating an issue of fact as to whether either of these conditions caused her harm.
 {¶ 16} Schwaller's expert witness testified that a patient's smoking could cause an increased risk of skin flaps and nipple necrosis, and that, therefore, a surgeon should inform such a patient of these risks preoperatively. Schwaller argued that Maguire had not warned her of these additional risks. But, as her own expert testified, Schwaller never developed nipple necrosis or skin flaps as a result of the mastopexy procedure. Schwaller cannot complain of risks that did not materialize.
 {¶ 17} Schwaller also failed to present evidence that Maguire was impaired while he was treating her, or that any possible impairment proximately caused any injury. In fact, Maguire's supervisors testified that, in May 1998, his performance as a resident was at the point where he was ready to be on his own, and that his ability as a surgeon was on a par with other residents. Nothing in the record demonstrates that his supervisors knew or had any reason to know of Maguire's drug use. Nor could Schwaller's expert state whether Maguire's use of prescription painkillers caused any error in judgment during his treatment of Schwaller. In fact, the testimony revealed that Maguire operated on one breast, Kurtzman on the other, and Schwaller's expert could see no difference in the appearance of Schwaller's breasts.
 {¶ 18} Because Schwaller failed to present evidence demonstrating a genuine issue of material fact as to the proximate cause of her injuries or as to her lack of consent to the procedures, we hold that the trial court properly granted summary judgment in favor of defendants-appellees on her battery claim. We overrule the first assignment of error.
 {¶ 19} In her second assignment of error, Schwaller argues that the trial court erred by refusing to allow at trial evidence of Maguire's drug use on the issue of his negligence. A trial court is vested with broad discretion in determining whether evidence should be admitted or excluded.[18] Our review is limited to whether the trial court abused its discretion.[19] "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."[20] In this case, there was no abuse of discretion by the trial court.
 {¶ 20} Schwaller argues that the trial court should have allowed her to present evidence of Maguire's drug use as evidence of habit under Evid.R. 406. That rule provides, "Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." Schwaller contends that the jury was entitled to hear evidence of Maguire's drug use to determine whether it had impaired his judgment and surgical ability. Schwaller also contends that the evidence was admissible as character evidence under Evid.R. 405(B), which provides, "In cases in which character or a trait of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct." We disagree.
 {¶ 21} In Boom v. Robinson,[21] the plaintiff, as administrator of the decedent's estate, filed a malpractice action against the decedent's doctor. The plaintiff had argued at trial that the doctor's ability to practice was impaired by his drug addiction and that evidence of his drug addiction was admissible. The trial court disagreed. On appeal, the court of appeals held that the trial court had properly excluded the evidence of the doctor's drug addiction. The court held that there was "no nexus between [the doctor's] drug abuse and his actions in treating [the decedent]."[22] The court reasoned that the evidence was too speculative to have any real probative value, and that the danger of unfair prejudice was great. "Further, due to the societal mores concerning abuse of drugs and [the doctor's] role as a physician, the jury might be incited to find liability due to his drug abuse rather than his breach of the applicable duty of care."[23] We agree with the court in Boom.
 {¶ 22} To establish a claim of medical malpractice, the plaintiff must show by a preponderance of the evidence that the physician acted or failed to act in a manner inconsistent with a physician of ordinary skill, care and diligence under similar circumstances, and that such acts or failures to act were the direct and proximate cause of the plaintiff's injury.[24] The issue in this case was not whether Maguire was impaired while treating Schwaller, but whether his treatment fell below the applicable standard of care.[25] Moreover, Maguire's character was not an essential element of Schwaller's negligence claim.[26] Therefore, we hold that the trial court properly excluded evidence of Maguire's drug abuse. We overrule the second assignment of error.
 {¶ 23} In her third assignment of error, Schwaller argues that the trial court erred by preventing her from raising the inference of spoliation of the evidence. The trial court had denied Schwaller's request that the jury be given an adverse-inference instruction that stated, "There has been evidence in this trial that slide photographs were taken of Christina Schwaller prior to surgery and that those slide photographs were in the custody of Sean Maguire and University Hospital, Inc. and are now missing. If a party fails to produce evidence which is under his control and reasonably available to him and not reasonably available to the adverse party, then you may infer that the evidence is unfavorable to the party who could have produced it and did not. You may only make this inference if there is a showing of malfeasance or gross neglect. [Citations omitted.]"
 {¶ 24} Our review is limited to whether the trial court abused its discretion in refusing to provide the jury instruction requested by Schwaller, and, if so, whether the refusal was prejudicial.[27] An adverse inference may arise where a party who has control of a piece of evidence fails to provide the evidence without satisfactory explanation.[28] Under those circumstances, the jury may draw an inference that would be unfavorable to the party who has failed to produce the evidence in question.[29] "Ohio courts normally would require a strong showing of malfeasance — or at least gross neglect — before approving such a charge."[30]
 {¶ 25} In this case, the evidence demonstrated no misconduct or gross neglect by the defendants-appellees. Moreover, the evidence indicated that the slides in question were not in the custody or control of the defendants-appellees. The evidence showed that Maguire had delivered the slides to Henry Neale, M.D., chairman of the Division of Plastic, Reconstructive and Hand Surgery of the University of Cincinnati Medical School, upon Neale's request. Neale testified that the divisions within the medical school would then have had access to the slides.
 {¶ 26} In this case, an inference of spoliation could not properly have been drawn against the defendants-appellees, where the record demonstrates no misconduct by the defendants-appellees, and where the slides were not in their custody or control. Therefore, we hold that the trial court did not abuse its discretion in rejecting Schwaller's proposed jury instruction.
 {¶ 27} We overrule the third assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
Gorman, P.J., and Painter, J., concur.
[1] Schwaller had named other defendants, but later dismissed her claims against them.
[2] In her response to Maguire and University Hospital's motion for partial summary judgment, Schwaller abandoned her claims against the defendants-appellees for fraudulent concealment, conspiracy, negligent supervision, and negligent credentialing.
[3] See Morton Intl., Inc. v. Continental Ins. Co. (1995),104 Ohio App.3d 315, 318, 662 N.E.2d 29, citing Hawley v. Ritley (1988),35 Ohio St.3d 157, 519 N.E.2d 390; Premier Assocs., Ltd. v. Loper,149 Ohio App.3d 660, 671, 2002-Ohio-5538, 778 N.E.2d 630; Hayes v.Murtha (Oct. 10, 1996), 10th Dist. No. 96APE04-512.
[4] See Polen v. Baker, 92 Ohio St.3d 563, 564-565, 2001-Ohio-1286,752 N.E.2d 258.
[5] See Armstrong v. Best Buy Co., 99 Ohio St.3d 79, 2003-Ohio-2573,788 N.E.2d 1088, citing Horton v. Harwick Chem. Corp. (1995),73 Ohio St.3d 679, 1995-Ohio-286, 653 N.E.2d 1196, paragraph three of the syllabus.
[6] See Lacey v. Laird (1956), 166 Ohio St. 12, 139 N.E.2d 25; Andersonv. St. Francis-St. George Hosp. (1992), 83 Ohio App.3d 221, 614 N.E.2d 841;Estate of Leach v. Shapiro (1984), 13 Ohio App.3d 393,469 N.E.2d 1047.
[7] Barrette v. Lopez (1999), 132 Ohio App.3d 406, 725 N.E.2d 314.
[8] Baird v. Kunzelman (Feb. 8, 1995), 2nd Dist. No. 14606.
[9] Watkins v. The Cleveland Clinic Found. (1998), 130 Ohio App.3d 262,719 N.E.2d 1052.
[10] Anderson v. St. Francis-St. George Hosp. (1992), 83 Ohio App.3d 221,614 N.E.2d 841.
[11] Lipp v. Kwyer, 6th Dist. No. L-02-1150, 2003-Ohio-3988 (trial court properly granted summary judgment on plaintiff's battery claim where plaintiff consented to procedure employed).
[12] See Anderson v. St.Francis-St. George Hosp., Inc. (1996),77 Ohio St.3d 82, 87, 671 N.E.2d 225.
[13] Id.; Lacey, supra, paragraphs one and two of the syllabus.
[14] Anderson v. St. Francis-St. George Hosp., Inc. (1996),77 Ohio St.3d 82, 84, 671 N.E.2d 225.
[15] Id.
[16] Anderson v. St. Francis-St. George Hosp. (1992), 83 Ohio App.3d 221,614 N.E.2d 841.
[17] Id.
[18] Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269, 569 N.E.2d 1056.
[19] State v. Finnerty (1989), 45 Ohio St.3d 104, 107,543 N.E.2d 1233.
[20] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140.
[21] (July 5, 2001), 9th Dist. No. 20314.
[22] Id.
[23] Id.
[24] Bruni v. Tatsumi (1976), 46 Ohio St.2d 127, 346 N.E.2d 673, paragraph one of the syllabus.
[25] Boom, supra.
[26] See Harbin v. Ohio Dept. of Mental Health (Dec. 4, 1990), 10th Dist. No. 89AP-345.
[27] See Rommes v. Southwest State Regional Transit Auth. (Mar. 29, 1995), 1st Dist. No. C-940120.
[28] Brokamp v. Mercy Hosp. Anderson (1999), 132 Ohio App.3d 850, 870,726 N.E.2d 594.
[29] Id.
[30] Vernardakis v. Thriftway, Inc. (May 7, 1997), 1st Dist. No. C-960713, citing Sullivan v. General Motors Corp. (N.D.Ohio 1991),772 F. Supp. 358, 364.