[Cite as *Van Horn v. Thomas & King*, 2014-Ohio-2941.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| ABBY VAN HORN, | ) | |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | CASE NO. 13 MA 124 |
| V. | ) | |
| | ) | OPINION |
| THOMAS & KING, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:　　Civil Appeal from Court of Common Pleas of Mahoning County, Ohio Case No. 11CV3700

JUDGMENT:　　Reversed and Remanded

APPEARANCES:

For Plaintiff-Appellant　　Attorney William E. Pfau III
P.O. Box 9070
Youngstown, Ohio 44512

For Defendants-Appellees　　Attorney William Jack Meola
972 Youngstown-Kingsville Road
P.O. Box 740
Vienna, Ohio 44473

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: June 20, 2014

DONOFRIO, J.

{¶1} Plaintiff-appellant, Abby Van Horn, appeals from a Mahoning County Common Pleas Court judgment granting summary judgment in favor of defendant-appellee, Thomas and King, Inc., on appellant's claim alleging her slip and fall on an unnatural accumulation of ice and snow.

{¶2} On December 27, 2010, at approximately 7:00 p.m., appellant, her three-year-old-son, and an acquaintance went to dinner at Applebee's Restaurant in Boardman. Applebee's is owned and operated by appellee. After spending approximately one hour in the restaurant eating dinner, appellant and her son exited the building. Appellant was holding her son's hand as the two walked down the sidewalk adjacent to the parking lot. Appellant's son was behind her, but still holding her hand. She turned to talk to him and as she did, appellant slipped on a patch of ice and fell on the sidewalk. The fall caused her to fracture her patella.

{¶3} After appellant's fall, as she sat on the sidewalk, she noticed that she had slipped on a patch of ice that was approximately 6-inches wide by 12- to 18-inches long. Appellant stated that she did not notice the ice until she was on the ground.

{¶4} The day before appellant's fall, Blasco Commercial Services (Blasco), which was under contract for snow removal at Applebee's, plowed the parking lot. According to appellant, there had been no precipitation, either snow or rain, on the day of her fall but it was cold and windy. Also according to appellant, when she walked on the sidewalk to enter the restaurant, it appeared to be cleared and salted with some patches of snow remaining.

{¶5} Appellant filed a complaint against appellee alleging that appellee breached its duty of care owed to her to maintain its premises in a reasonably safe condition and due to appellee's negligence, she slipped and fell on an unnatural accumulation of ice. Appellant later amended her complaint to add claims against Blasco.

{¶6} Appellee and Blasco filed a motion for summary judgment. They asserted they could not be liable for appellant's fall because (1) it was not a result of

a condition of ice and snow that was made more hazardous by their maintenance of the area and (2) the ice on which appellant fell was open and obvious. Appellant filed a response in opposition.

{¶7} A magistrate issued a decision in which he stated appellant conceded Blasco was entitled to summary judgment. The magistrate went on to find there was a genuine issue of material fact with respect to appellee's alleged negligence in the maintenance of its premises. The magistrate found there was circumstantial evidence that the ice on which appellant slipped and fell was an unnatural accumulation caused by water and ice dripping from the bumpers of vehicles that were permitted to park in such a manner that the bumpers would overhang the sidewalk in front of Applebee's. He further found that while appellee has installed parking blocks on the south side of the building, which prevented vehicles' bumpers from overhanging the adjacent sidewalk, no such bumpers were present on the west side of the building where appellant fell. Therefore, the magistrate concluded there was enough circumstantial evidence to create a genuine issue of material fact to preclude summary judgment in favor of appellee.

{¶8} Appellee filed objections to the magistrate's decision. It asserted that in making his decision the magistrate made an impermissible inference that appellant fell on ice that was formed by water or snow that had dripped from a bumper and then made another inference that water or snow did drip from a bumper and froze on the sidewalk where appellant fell. Appellee argued the evidence presented did not support these inferences. Appellee further argued that the ice on which appellant fell was open and obvious. And appellee argued the magistrate failed to apply the law as set out in *Leightner v. Cafaro Ross Partnership*, 7th Dist. No. 01 CA 132, 2002-Ohio-5209.

{¶9} The trial court agreed with appellee's objections. It found reasonable minds could come to but one conclusion and that conclusion was adverse to appellant. Therefore, the trial court entered summary judgment in appellee's favor. It also granted summary judgment to Blasco.

{¶10} Appellant filed a timely notice of appeal on August 16, 2013. Appellant does not contest the court's grant of summary judgment in favor of Blasco. Her appeal only challenges the grant of summary judgment in favor of appellee.

{¶11} Appellant raises a single assignment of error that states:

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT THOMAS & KING, INC. IN ITS JUDGMENT ENTRY OF AUGUST 6, 2013.

{¶12} Appellant argues summary judgment was improper in this case.

{¶13} First, appellant contends there is a genuine issue of material fact as to whether the ice was an open and obvious condition. She asserts appellee did not put forth any evidence that the ice that caused her fall was open and obvious. And she notes that in her deposition she stated she did not notice the ice until she was on the ground next to it and the ice was not noticeable except upon close observation. Additionally, appellant notes appellee's manager stated that Applebee's employees conducted visual inspections of the area every 15 to 30 minutes specifically looking for ice and snow. Thus, appellant contends either the ice was not open and obvious because it was not noticed by Applebee's employees or appellee was negligent in its inspection.

{¶14} Second, appellant argues there is a genuine issue of material fact as to whether the ice on the walkway was a natural accumulation of ice. She asserts the evidence demonstrated that Blasco shoveled and salted the sidewalks at Applebee's on December 26, 2010, in response to one-half of an inch of snow. (Jerry Blasco Aff. ¶3, Ex. C). No additional work was done by Blasco until January 7, 2011. (Jerry Blasco Aff. Ex. C). There had been no precipitation on December 27, 2010. (Van Horn Aff.). When appellant arrived at Applebee's, the sidewalks appeared shoveled and salted. Appellant further asserts that her affidavit and accompanying photographs demonstrate that vehicles parking at Applebee's routinely park with the front bumpers overhanging the sidewalk. (Van Horn Aff. Exs. 4, 5, 6; Dearden Dep.

Exs. 3, 5, 6). This evidence, appellant asserts, reveals that even though the sidewalks were salted and shoveled following one-half of an inch of snowfall the previous day, the sidewalk developed an oblong 12-inch to 18-inch long by 6-inch wide layer of ice along the parking lot edge of the sidewalk. Taking all of the circumstantial evidence into consideration, appellant argues, leads to the conclusion that she fell on an unnatural accumulation of ice from water and ice that dripped from vehicles' bumpers that overhung the sidewalk and then froze, which was the conclusion the magistrate reached. She argues the inferences were reasonably drawn from the evidence.

{¶15} Finally, appellant argues the evidence did not establish that appellee met its duty of reasonable care owed to her as a business invitee.

{¶16} In reviewing a trial court's decision on a summary judgment motion, appellate courts apply a de novo standard of review. *Cole v. Am. Industries & Resources Corp.*, 128 Ohio App.3d 546, 552, 715 N.E.2d 1179 (7th Dist.1998). Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Flemming*, 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 (1994). A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

{¶17} A negligence claim requires the plaintiff to prove: (1) duty; (2) breach of duty; (3) causation; and (4) damages. *Anderson v. St. Francis-St. George Hosp., Inc.*, 77 Ohio St.3d 82, 84, 671 N.E.2d 225 (1996).

{¶18} In this case, appellant was appellee's business invitee. Generally, a premises owner owes a business invitee a duty to exercise ordinary care and to

protect the invitee by maintaining the premises in a safe condition. *Presley v. Norwood*, 36 Ohio St.2d 29, 31, 202 N.E.2d 81 (1973); *Light v. Ohio University*, 28 Ohio St.3d 66, 67, 502 N.E.2d 611 (1986).

**{¶19}** But a business owner does not owe invitees a duty to warn of dangers that are open and obvious. *Armstrong v. Best Buy Co. Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶5. "Where a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises." *Id.* at the syllabus. That is because the owner may reasonably expect those entering the property to discover the dangers and take appropriate measures to protect themselves. *Simmers v. Bentley Constr. Co.*, 64 Ohio St.2d 642, 644, 597 N.E.2d 504 (1992).

**{¶20}** Likewise, a premises owner "ordinarily owes no duty to business invitees to remove natural accumulations of ice and snow from the private sidewalks on the premises, or to warn the invitee of the dangers associated with such natural accumulations of ice and snow." *Brinkman v. Ross*, 68 Ohio St.3d 82, 83, 623 N.E.2d 1175 (1993). This is because people are assumed to appreciate the risks associated with natural accumulations of ice and snow and to protect themselves against the inherent risks presented by natural accumulations of ice and snow. *Id.* at 84.

**{¶21}** Additionally, this court has held that the open and obvious doctrine applies to unnatural accumulations of ice and snow, thus rendering no duty on the part of the landowner. *Mounts v. Ravotti*, 7th Dist. No. 07 MA 182, 2008-Ohio-5045, ¶53-58;

**{¶22}** In her deposition, appellant stated that when she arrived at Applebee's it was dark. (Van Horn Dep. 28). She parked in front of the building, facing South Avenue. (Van Horn Dep. 36). As she entered Applebee's, appellant noticed that the parking lot was plowed or shoveled, and salted. (Van Horn Dep. 40). And there were big mounds of snow in the parking lot from the plowing. (Van Horn Dep. 40). She had no trouble walking on the sidewalk into the restaurant that evening. (Van

Horn Dep. 40, 43). The sidewalk was cleared and salted. (Van Horn Dep. 41). Appellant noticed some patches of snow "here and there" on the sidewalk. (Van Horn Dep. 42-43). Additionally, some parts of the sidewalk were wet and some parts were dry. (Van Horn Dep. 63).

{¶23} When she exited Applebee's, appellant was holding her three-year old son's hand with her left hand. (Van Horn Dep. 32). The weather was cold and windy. (Van Horn Dep. 33). It was neither raining nor snowing. (Van Horn Dep. 33). The temperature was in the 20s or 30s. (Van Horn Dep. 34). Other patrons were on the sidewalk so appellant went to the left-hand side of the sidewalk, closest to the parking lot, to pass the other patrons. (Van Horn Dep. 45). Appellant's son was behind her, but she was still holding his hand as she turned to talk to him. (Van Horn Dep. 45). When she turned, her right foot landed on a patch of ice and she fell. (Van Horn Dep. 45).

{¶24} Appellant stated that she went generally through the same area when she entered Applebee's as when she exited. (Van Horn Dep. 48). She did not notice any snow or ice in the area where she fell when she was entering Applebee's. (Van Horn Dep. 48). Appellant did not notice the ice that she slipped on until after she fell. (Van Horn Dep. 48). But nothing was obscuring her view of the ice. (Van Horn Dep. 48). Once she fell, appellant examined the patch of ice and determined it was approximately 12- to 18-inches long and 6-inches wide. (Van Horn Dep. 49). There was no snow on top of the ice and it was "pretty flush" with the sidewalk. (Van Horn Dep. 50-51). There was nothing obscuring appellant's view of the ice. (Van Horn Dep. 48).

{¶25} Appellant opined that vehicles' bumpers that were overhanging the sidewalk on the night of the fall played a part in her fall. (Van Horn Dep.63-64). She stated the ice patch was in the area where a bumper would have overhung the sidewalk and ice and water would have dripped onto the sidewalk. (Van Horn Dep. 64). There was no car parked in that spot when she fell. (Van Horn Dep. 64). But she observed that the ice was in the area where a bumper would overhang the

sidewalk and the ice patch was the right width and depth to match up with a bumper. (Van Horn Dep. 64).

{¶26} According to Applebee's manager Jeffrey Dearden, he was working on the night of appellant's fall, but could not recall the incident. Dearden gave deposition testimony about Applebee's general practices. Dearden stated that snow removal is handled by an outside contractor. (Dearden Dep. 15). But general cleanup and maintenance is handled by Applebee's employees. (Dearden Dep. 15). He stated that employees remove trash and "sweep" the parking lot for trash, ice, and snow. (Dearden Dep. 15). This is done at the manager's discretion. (Dearden Dep. 16). Dearden stated that the manager on duty would check the walkways to make sure they were clear of ice and snow and have an employee remove it with a shovel or "ice melt." (Dearden Dep. 16). He stated that during the winter months, the manager would send employees out on a regular basis, approximately every 15 to 30 minutes, to look for ice and snow that needed to be removed. (Dearden Dep. 16-17).

{¶27} Dearden also testified regarding "parking blocks," which are located in some areas of Applebee's parking lot that appear to be curb-like, concrete barriers that prevent cars from parking too close to the building. (Dearden Dep. 22-23). Dearden stated these parking blocks were located on the south-side of Applebee's parking lot but not in the front of the building. (Dearden Dep. 22-23). He then identified a photograph depicting several cars parked in front of Applebee's with their bumpers overhanging the sidewalk. (Dearden Dep. Ex. 5). Dearden stated he has observed vehicles parking in this manner. (Dearden Dep. 24).

{¶28} Per the affidavit of Jerry Blasco, Blasco was under contract to perform snow removal services at Applebee's. (Blasco Aff. ¶2). Jerry Blasco averred that prior to appellant's December 27 fall, the last time Blasco performed services at Applebee's was in the morning on December 26, when it salted and shoveled the parking lot and also salted the walks. (Blasco Aff. ¶3, Ex. C). This was in response to one-half inch of snow. (Blasco Aff. Ex C). The next date that Blasco performed services at Applebee's was January 7. (Blasco Aff. Ex. C).

**{¶29}** A genuine issue of fact exists as to whether the ice on which appellant slipped was a natural accumulation or an unnatural accumulation. Appellant stated that when she first walked on the sidewalk she noticed patches of snow "here and there." Given that the temperature was in the 20s or 30s, the snow could have melted a bit and frozen into ice patches, which would have been a natural accumulation. Appellant also stated that cars were parked with their bumpers overhanging the sidewalk and that the size of the ice patch on which she slipped was consistent with water dripping off of the bumper, landing on the sidewalk, and freezing. If water dripped off a bumper onto the sidewalk and froze, this would have been an unnatural accumulation.

**{¶30}** Whether the ice patch was the result of a natural or unnatural accumulation is irrelevant, however, if it was open and obvious.

**{¶31}** Appellant stated that it was dark outside when she arrived at Applebee's. Yet she was able to observe that the sidewalk was cleared and salted. And she noticed there were some patches of snow on the sidewalk. She also noticed that parts of the sidewalk were wet and parts were dry. However, appellant claimed she did not see the 12- to 18-inch long patch of ice on which she slipped until she was on the ground. Notably, when appellant slipped she was turning to speak to her son who was behind her. Given this evidence, it is possible that the ice patch was open and obvious. Regardless of the darkness outside, appellant was able to observe the sidewalk conditions in detail. And appellant stated that nothing was obscuring her view of the ice. Importantly, however, appellant slipped when she turned to look at her son, who was walking behind her. It is possible that given appellant's description of the conditions that evening that, had she not turned, she would have noticed the ice patch.

**{¶32}** But there is evidence, however, to suggest that the ice patch was not open and obvious. Dearden, Applebee's manager, stated that during the winter, an employee inspects the outside area of the restaurant every 15 to 30 minutes looking for ice and snow that needs to be removed. If the employee notices ice or snow in

need of removal, the employee tends to it with ice melt or a shovel. Presuming Applebee's procedures were followed on the evening of appellant's fall, an employee would have inspected the sidewalk at the most 30 minutes prior to appellant's fall. If the ice patch was present, it was not open and obvious or else the employee would have noticed it and treated it.

**{¶33}** Thus, construing the evidence in appellant's favor, a genuine issue of material fact exists as to whether the ice patch was open and obvious. This does not end our analysis, however.

**{¶34}** Appellee urges that this case is similar to that of *Leightner v. Cafaro Ross Partnership*, 7th Dist. No. 01 CA 132, 2002-Ohio-5209. In *Leightner*, the appellant stepped on a piece of ice and fell when returning to his car in the Eastwood Mall parking lot. *Id.* at ¶2. Appellant filed a negligence complaint against the mall. The trial court granted summary judgment in favor of the mall concluding that the appellant slipped on a natural accumulation of ice and snow, which the mall had no duty to remove, and the condition was open and obvious. *Id.* ¶4. The appellant appealed.

**{¶35}** This court discussed the difference between natural and unnatural accumulations of ice and snow. We noted that a natural accumulation is that which accumulates as a result of an act of nature. *Id.* at ¶52, citing *DeSalvo v. Edward J. DeBartolo Corp.*, 7th Dist. No. 96 CA 229, 1998 WL 896327 (Dec. 16, 1998). But an unnatural accumulation of ice and snow is one caused by forces other than meteorological forces of nature such as low temperatures, strong winds, and drifting snow. *Id.*

**{¶36}** We then cited the appellant's deposition testimony on the subject. The appellant described the parking lot as having a big pile of dirty snow and ice from previous snow-plowing and noted that "chunks" had rolled down into the parking lot. *Id.* at ¶28. The appellant stated when he was walking to his car, "it was a blizzard," there was snow on the parking lot, it was blowing and windy. *Id.* at ¶30, 42. The parking lot had ice chunks or "black balls of ice" on it, some were the size of

grapefruits. *Id.* at ¶33, 44, 48. Considering this evidence, we stated it was arguable whether the appellant's fall was caused by a natural or unnatural accumulation of ice. *Id.* ¶54. Therefore, we concluded the trial court may have erred in finding that the fall was due to a natural accumulation. *Id.*

**{¶37}** We noted the requirements a slip-and-fall plaintiff must show in a case involving an unnatural accumulation of ice and snow: (1) the defendant created or aggravated the hazardous condition; (2) the defendant knew or should have known of the hazardous condition; and (3) the hazardous condition was substantially more dangerous than it would have been in its natural state. *Id.* at ¶53, citing *DeSalvo*, supra. We stated that the question in that case was whether the mall was negligent in creating the condition that led to the appellant's fall. *Id.* at ¶55. We went on to find there was a genuine issue of material fact as to whether the mall created an unnatural accumulation of ice and snow by plowing the parking lot and a genuine issue of material fact as to whether the pile of snow resulting from the plowing created a hazard. *Id.* But we concluded the pile of snow was not substantially more dangerous than it would have been in its natural state. *Id.* We noted that the snow had to be piled somewhere and it should be expected that balls or chunks of ice and snow would result and roll away from the pile. *Id.* Moreover, we noted, because of the harsh weather that day, conditions were hazardous to begin with. *Id.* We then concluded that we should not discourage land owners from attempting to clear ice and snow from their property by holding them liable for injury resulting from remaining ice and snow. *Id.* Thus, we affirmed the trial court's award of summary judgment.

**{¶38}** *Leightner*, however, is distinguishable from this case. First, in *Leightner*, the weather conditions at the time of the appellant's fall were blizzard-like. Thus, there was clearly a natural accumulation of snow occurring at the time of the fall. But in this case, although it was cold out, it was neither raining nor snowing at the time of appellant's fall. Second, in *Leightner*, we determined that the pile of snow was not substantially more dangerous than it would have been in its natural state, i.e., spread over the parking lot. And we reasoned that we did not want to

discourage land owners from attempting to clear ice and snow from their property by finding them liable for injury resulting from any remaining ice and snow.  In this case, however, the evidence suggested it was possible that the patch of ice on which appellant slipped was caused from water and ice dripping from car bumpers onto the sidewalk and then freezing.  This would have had nothing to do with Applebee's attempts to clear the ice and snow from their parking lot and sidewalk.  Appellant did not slip on ice that had been piled up in clearing the parking lot or sidewalk.

{¶39}  Additionally, in examining the requirements we set out in *Leightner* that a slip-and-fall plaintiff must show in a case involving an unnatural accumulation of ice and snow, genuine issues of material fact exist here.  First, there is a question of fact as to whether appellee aggravated the hazardous condition by allowing vehicles to park with their bumpers overhanging the sidewalk.  Second, there is a question of fact as to whether appellee knew or should have known of the ice on the sidewalk since its employees were conducting checks of the parking lot and sidewalk every 15 to 30 minutes.  And as to the third requirement, while there was no evidence that appellee altered the natural state of the ice on the sidewalk, there was evidence to suggest that the ice accumulated on the sidewalk in an unnatural way, by dripping off of car bumpers, as opposed to the natural way of falling from the clouds.

{¶40}  In sum, genuine issues of material fact exist as to whether the ice on which appellant slipped was open and obvious, whether the ice was due to a natural or unnatural accumulation, and whether appellant can meet all of the requirements a slip-and-fall plaintiff must show in a case involving an unnatural accumulation of ice and snow.  Therefore, summary judgment was improper.

{¶41}  Accordingly, appellant's sole assignment of error has merit.

**{¶42}** For the reasons stated above, the trial court's judgment is hereby reversed. The matter is remanded to the trial court for further proceedings.

Vukovich, J., concurs.

DeGenaro, P.J., dissents.