JUDGES: Hon. Gene Donofrio, Hon. Mary DeGenaro, Hon. Carol Ann Robb
OPINION
DONOFRIO, J.
{¶ 1} Plaintiff-appellant, Poseidon Environmental Services, Inc., appeals the Mahoning County Court of Common Pleas' decision to limit an adverse inference jury instruction to only two pieces of evidence and granting directed verdicts in favor of defendants-appellees-cross-appellants, Nu Way Industrial Waste Management, LLC ("Nu Way"), Pamela Johnston ("Johnston"), Georgienne Douropoulos ("Georgienne"), and Louie Douropoulos ("Louie"). Defendants-appellees-cross-appellants are collectively referred to herein as "appellees." Appellees appeal the Mahoning County Court of Common Pleas' order denying the remaining directed verdict motions and the court's order issuing an injunction against Johnston.
{¶ 2} Appellant is in the business of brokering hazardous waste transportation services to the industrial coatings industry with an emphasis on structural steel painters and lead abatement contractors. In 2007, Johnston was hired to work for appellant. Johnston's job responsibilities are somewhat in dispute. According to appellant, Johnston's job responsibilities included contacting customers directly in order to provide them with price quotes for appellant's services. This exposed Johnston to: appellant's customer list, the name, phone number, and email address of the contact person for each customer, and price rates/profit margins of appellant. Appellant estimates that Johnston was privileged to approximately 100 different customer identities and their contact information throughout the duration of her employment. Johnston's job responsibilities also included preparing submittals to each customer which included price quotes for appellant's services. According to Johnston, her responsibilities were more akin to an office secretary. In order to carry out her job responsibilities, appellant provided Johnston with numerous computing devices including: a cell phone, a tablet device, and a laptop computer. These devices were considered appellant's property.
{¶ 3} In January of 2013, Johnston terminated her employment with appellant *1149 and began working for Nu Way. Nu Way is owned in whole or in part by Georgienne and Louie. Nu Way is also in the business of brokering hazardous waste transportation services to various businesses. Georgienne is Johnston's mother and Louie is Johnston's stepfather. Upon terminating her employment with appellant, appellant instructed Johnston to return any and all phones and computer devices that appellant had provided her. Appellant argues that it instructed Johnston to keep any information on her devices related to appellant's business intact which potentially included: customer lists, customer contact information, pricing information, and communications between Johnston and various customers. Johnston returned her smart phone, tablet, and computer to appellant. However, the smart phone and tablet were reset to factory settings which erased any and all data on them. Similarly, some information from the computer had been deleted.
{¶ 4} Appellant then contracted Global Digital Forensics to perform forensic analyses on the three devices. David Gitkos from Global Digital Forensics was the employee who was assisting appellant in this venture. Mr. Gitkos' analyses of the phone and tablet revealed no information. However, Mr. Gitkos's analysis of the computer revealed numerous references to Nu Way, Georgienne, and Louie.
{¶ 5} On May 29, 2014, appellant contacted Johnston and Nu Way via a letter and demanded that they cease and desist from contacting any of appellant's customers. Additionally, appellant requested that Johnston and Nu Way preserve numerous items in anticipation of litigation. On August 1, 2014, appellant then filed this action alleging multiple counts against appellees including: a common law breach of duty claim, a misappropriation of trade secrets claim, a breach of contract claim, and a claim for injunctive relief against appellees.
{¶ 6} The case then proceeded to discovery. During the discovery phase, appellant received evidence that appellees had provided services to approximately ten of appellant's clients during the 2014 year. Additionally, Mr. Gitkos performed a more thorough examination of the laptop Johnston returned to appellant and discovered that approximately 22,734 of appellant's company files had been accessed and most likely copied onto two USB mass storage devices.
{¶ 7} Eventually, appellant filed a motion for the trier of fact to make an adverse inference against appellees. The basis of the motion was that when Johnston terminated her employment with appellant, she was immediately instructed to return any and all computerized devices appellant had provided her. Additionally, appellant instructed Johnston to maintain any and all company records and communications on those devices to not hinder appellant's business. Despite these requests, the devices were returned with deleted data. Furthermore, Mr. Gitkos performed a more thorough analysis of Johnston's laptop and concluded that Johnston accessed approximately 22,734 company files belonging to appellant and copied them between January 28, 2014 and February 5, 2014. Additionally, appellant argued that it requested numerous text messages and emails from all appellees during the discovery process but appellees refused to comply, even after several motions to compel discovery were granted. However, the trial court overruled appellant's motion for the trier of fact to make an adverse inference. After the discovery phase, the case then proceeded to a jury trial.
{¶ 8} At trial, on appellant's case-in-chief, appellant called its owner Pat Kapsulis, *1150 Mr. Gitkos from Global Digital Forensics, Louie, Georgienne, and Johnston. Appellant presented or attempted to present evidence that showed: Johnston violated a common law duty of loyalty she owed to appellant by copying appellant's files for Nu Way's use, the documents Johnston copied were trade secrets, Johnston's employment contract with appellant contained a no solicitation of clients clause that she violated, Georgienne, Louie, and Nu Way knew or should have known that documents Johnston provided to them were misappropriated trade secrets, and ten out of the 14 companies Nu Way did business with in 2014 were customers of appellant's.
{¶ 9} At the conclusion of appellant's case-in-chief, appellees moved pursuant to Civ.R. 50 for a directed verdict on all claims. Appellees' argument for this motion, and throughout its case-in-chief, was that the files Johnston supposedly transferred from appellant to Nu Way were not trade secrets. Furthermore, appellees argued that Johnston was not responsible for soliciting clients at Nu Way. Appellant argued against this motion by arguing that sufficient evidence had been provided to the trial court to show that appellant could succeed on all of its claims.
{¶ 10} The trial court granted appellee's Civ.R. 50 motion with regards to any and all of appellant's claims against Georgienne and Louie. The trial court also granted appellees' Civ.R. 50 motion on misappropriation of trade secrets claims regarding appellant's customer lists against Johnston and Nu Way. The trial court held that customer lists and contact information did not constitute a trade secret. The trial court denied the remaining Civ.R. 50 motions regarding all claims against Johnston and Nu Way and ruled that the pricing and bid quoting information belonging to appellant that appellees may have been in possession of were trade secrets.
{¶ 11} Appellees then presented their case-in-chief. In addition to appellees calling Georgienne and Johnston, appellees also called Dr. Kriss Schuler and Gus Chirgott. Dr. Schuler testified that, to the best of his knowledge after reviewing Mr. Gitkos' report, Johnston merely copied appellant's data from a cloud storage device onto a computer that was owned by appellant. Mr. Chirgott testified that he co-owns a hazardous waste transportation brokerage company and that he does not consider his pricing and bid quote information a trade secret.
{¶ 12} At the close of evidence and after closing arguments, the trial court read its instructions of law to the jury. Relevant to this appeal, the trial court instructed the jury that it could make an adverse inference against appellees concerning the contents of two mass storage USB devices that were connected to appellant's computer in Johnston's possession as appellant's files were being copied. Appellees contended that these devices were accidentally damaged and could not be provided during discovery or trial. Appellant objected to this particular jury instruction on the basis that it should not have been limited to just the USB devices and should have included: emails appellant requested during discovery that were not provided, cell phones appellant requested during discovery that were not provided, and Georgienne and Louie's personal laptop that appellant requested during discovery but was not provided. Appellant contended that the emails, cell phones, and laptop that were not produced potentially had incriminating evidence that was harmful to appellees' case which was why they were not provided. However, the trial court did not extend its adverse inference instruction.
{¶ 13} On April 29, 2016, the jury returned the following verdicts: Johnston did not violate her common law duty of *1151 loyalty to appellant, Johnston was exposed to and misappropriated the trade secrets of appellant, and Nu Way did not misappropriate any trade secrets of appellant's to its benefit.
{¶ 14} However, on May 27, 2016, the trial court issued its final judgment entry in this case. The trial court rendered judgment in favor of appellant on its common law breach of loyalty claim against Johnston. Additionally, the trial court rendered judgment in favor of appellant on its claim for injunctive relief and enjoined Johnston from working in the industrial waste brokerage business in Mahoning County, Ohio for a period of 18 months. Additionally, the trial court enjoined Johnston from soliciting any of appellant's clients for a period of six months. Appellant timely filed this appeal on June 20, 2016. Appellant now raises two assignments of error.
{¶ 15} Appellant's first assignment of error states:
THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY ON THE ADVERSE INFERENCE REGARDING EMAILS NOT PROVIDED IN DISCOVERY, THE CELL PHONES THAT WERE NOT PRODUCED FOR DIGITAL IMAGING, AND THE HP COMPUTER NOT PRODUCED FOR DIGITAL IMAGING.
{¶ 16} Appellant argues that the adverse inference jury instruction should not have been limited to the two USB mass storage devices and should have encompassed other potential pieces of evidence. During the discovery phase, appellant requested certain emails, cell phones that were in appellees' possession, and the personal computer of Georgienne and Louie which, appellant contends, they used for purposes of conducting Nu Way business. However, none of these were produced during the discovery process. Appellant argues that appellees' inability or refusal to provide these potential pieces of evidence is sufficient to warrant an adverse inference jury instruction.
{¶ 17} When reviewing a trial court's jury instructions, the proper standard of review of trial court's refusal to give a requested jury instruction is whether such refusal constituted an abuse of discretion under the facts and circumstances of the case. State v. Everson, 7th Dist., 2016-Ohio-87, 57 N.E.3d 289, ¶ 58. Abuse of discretion implies that the court acted in an unreasonable, arbitrary, or unconscionable manner. State v. Herring , 94 Ohio St. 3d 246, 2002-Ohio-796, 762 N.E.2d 940.
{¶ 18} An adverse inference may arise where a party who has control of a piece of evidence fails to provide the evidence without satisfactory explanation. Vidovic v. Hoynes, 11th Dist., 29 N.E.3d 338, 2015-Ohio-712, ¶ 78 citing Schwaller v. Maguire , 1st Dist. No. C-02055, 2003-Ohio-6917, 2003 WL 22976339. Under those circumstances, the jury may draw an inference that would be unfavorable to the party who has failed to produce the evidence in question. Id. This allows courts to give such a charge where there is a showing of "malfeasance" or "gross neglect." Id.
{¶ 19} Appellant argues that it filed proposed jury instructions on April 27, 2016 that included an instruction for an adverse inference due to appellees' failure to produce: two USB drive mass storage devices inserted into appellant's computer at the time appellant's files were being copied, Johnston's cell phone, Louie's cell phone, the Nu Way computer, and Johnston's 2013 tax returns. An adverse inference was not requested regarding Georgienne's cell phone because she provided it to appellant to be forensically analyzed. But during the instructions of law, the trial court instructed *1152 the jury to make an adverse inference against Johnston and Nu Way on just the two USB drive mass storage devices. (Tr. 611-612). Furthermore, appellant's counsel did object to the trial court's decision to limit the instruction to just the USB drive mass storage devices. (Tr. 629).
{¶ 20} Concerning the emails being granted an adverse inference, appellant sent requests for production of documents to appellees seeking: all emails Johnston sent to Georgienne and Louie between the years 2010 and 2014, all emails Georgienne sent to Johnston between the years 2010 and 2014, and all emails Louie sent to Johnston between the years 2010 and 2014. Appellees objected to these requests arguing that they were overly broad and unduly burdensome. Appellant then filed a motion to compel appellees to comply with these discovery requests which the trial court granted. However, the emails were not produced.
{¶ 21} Johnston, Georgienne, and Louie would be in possession of emails they sent each other. The objection appellees made to produce these emails during discovery was that the requests were overly broad, unduly burdensome, and unlikely to lead to discoverable evidence. However, the trial court overruled appellees objection and ordered appellees to comply with appellant's request. The trial court's ruling would negate any legal explanation appellees may have had for not providing the emails. Moreover, it does not appear from the record that appellees had a sufficient reason to explain why the emails were not produced.
{¶ 22} However, appellant's brief and reply brief for this appeal are silent on the element of malfeasance or gross neglect in order to obtain an adverse inference. After reviewing the record, there is no showing of malfeasance or gross neglect on the part of appellees failing to provide the emails appellant requested. Without a showing of malfeasance or neglect, the trial court did not abuse its discretion by not including the emails in its adverse inference instruction.
{¶ 23} With regard to Johnston and Louie's cell phones, these two appellees would be in possession of their respective cell phones and the record does not indicate any satisfactory explanation for their absence from discovery or trial. However, there again appears to be no indication that the absence of their phones was due to any malfeasance or gross neglect on the part of Johnston or Louie. Without any indication that Johnston or Louie acted with malfeasance or gross neglect, the trial court did not abuse its discretion by not including these cell phones in its adverse inference instruction.
{¶ 24} Regarding appellees' computer, there is evidence in the record that it belonged to Georgienne and Louie and was used to conduct Nu Way business. (Trial Tr., 353-355). Furthermore, there is no satisfactory explanation for its absence from discovery. However, there again is no indication from the record that its absence was due to malfeasance or gross neglect on any part of the appellees. Without any indication of malfeasance or gross neglect on the part of appellees, the trial court did not abuse its discretion by not including the Nu Way computer in its adverse inference instruction.
{¶ 25} Ultimately, with no evidence of malfeasance or gross neglect on appellees' part in failing to produce these potential pieces of evidence, the trial court did not abuse its discretion in not allowing the adverse inference jury instruction regarding these pieces of evidence.
{¶ 26} Accordingly, appellant's first assignment of error is without merit and overruled.
*1153 {¶ 27} Appellant's second assignment of error states:
THE TRIAL COURT ERRED IN DIRECTING A VERDICT IN FAVOR OF GEORGIENNE DOUROPOULOS AND LOUIE DOUROPOULOS ON THE CLAIM OF MISAPPROPRIATED TRADE SECRETS IN VIOLATION OF OHIO REVISED CODE SECTIONS 1333.61 TO 1333.69, UNIFORM TRADE SECRETS ACT.
{¶ 28} Appellant raises two arguments concerning this assignment of error. First, appellant argues that there was evidence in the record to suggest that Georgienne and Louie had reason to know that information provided to them by Johnston constituted a trade secret. Appellant points out that the relevant definition of "misappropriation" is the "Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." R.C. 1333.61(B)(1). Moreover, appellant argues that if the trial court issued an adverse inference regarding the emails, cell phones, and the computer that appellees did not produce, the jury could have found for appellant on its claim of misappropriation of trade secrets against Georgienne and Louie. Second, appellant argues that the trial court erred in ruling that customer lists do not constitute a trade secret.
{¶ 29} Addressing appellant's first argument concerning this assignment of error, when a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue. Civ.R. 50(D). "A motion for directed verdict does not present any factual issues, but a question of law, even though in deciding such a motion, it is necessary to review and consider the evidence." Ruta v. Breckenridge-Remy Co. , 69 Ohio St.2d 66, 430 N.E.2d 935 (1982). "When a motion for a directed verdict is entered, what is being tested is a question of law; that is, the legal sufficiency of the evidence to take the case to the jury." Id. "The evidence is granted its most favorable interpretation and is considered as establishing every material fact it tends to prove." Id. Questions of law are subject to a de novo review. State v. Brown , 142 Ohio St.3d 92, 2015-Ohio-486, 28 N.E.2d 81, ¶ 7.
{¶ 30} Ohio's Uniform Trade Secrets Act is governed by R.C. 1333.61 - 1333.69. Misappropriation, in its relation to Ohio's Uniform Trade Secrets Act, is defined as the acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means. R.C. 1333.61(B)(1).
{¶ 31} The trial court granted appellees' Civ.R. 50 motion with regard to any and all claims against Georgienne and Louie but denied the motion with regard to any and all claims against Nu Way. Appellant's argument is that Georgienne and Louie misappropriated its pricing information for the benefit of Nu Way. Appellant asserts that Georgienne and Louie misappropriated the pricing information because they had reason to know that any information given to them by Johnston was misappropriated from appellant.
{¶ 32} There is evidence in the record that Georgienne and Louie knew or should have known that any information Johnston was providing to them as owners/operators of Nu Way was a trade secret belonging to appellant. Appellant points out that this was shown by appellant sending letters to preserve any and all information on its *1154 devices that Johnston was in possession of and that Georgienne and Louie knew about these letters. Appellees admitted the existence and receipt of those letters in their answer in this action.
{¶ 33} However, to the extent Georgienne and Louie may have known that any information Johnston was providing to them was a trade secret, any error made by the trial court in granting appellees' Civ.R. 50 motion concerning claims against Georgienne and Louie is harmless in nature. Reviewing courts are required to disregard any error or defect in the pleadings or proceedings that do not affect the substantial rights of the adverse party. R.C. 2309.59.
{¶ 34} The trial court denied the Civ.R. 50 motion with regard to the misappropriation of trade secrets claim against Nu Way and allowed the jury to come to a verdict on that claim. The jury came to the verdict that Nu Way did not misappropriate any trade secrets belonging to appellant. If the only employees of Nu Way are Johnston, Georgienne, and Louie, as appellant argues, and if Nu Way did not misappropriate any trade secrets in this case, it would be highly unlikely that the jury would have found Georgienne and Louie to have misappropriated any trade secrets either. If Georgienne and Louie were misappropriating any trade secrets of appellant's, it would be for the benefit of their hazardous waste brokerage company, Nu Way. Because the jury came to the decision that Nu Way was not misappropriating trade secrets in this case, it is highly unlikely that the jury would come to the conclusion that its owners/operators were misappropriating trade secrets. Consequently, the trial court's decision to dismiss all claims against Georgienne and Louie is harmless error and appellant's first argument concerning this assignment of error is without merit.
{¶ 35} Addressing appellant's second argument on this assignment of error, a trade secret is defined, in relevant part, as business information or plans, financial information, or listing of names, addresses, or telephone numbers. R.C. 1333.61(D). In order for the items listed in R.C. 1333.61(D) to be considered a trade secret, the person asserting such information is a trade secret must derive independent economic value, actual or potential, from said information not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use and the information is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. R.C. 1333.61(D)(1)-(2).
{¶ 36} Addressing the customer lists, while ruling on appellees' Civ.R. 50 motion, the trial court held:
"I am going to overrule the motion and indicate that there are certain things that the jury may not find were or constituted trade secrets, and that involves any owner or customer of the broker. None of those people are-their lists or contact information not concerning a trade secret, do not constitute a trade secret. And then, of course, the other service individuals, the transport people, the painters, all of these other people that the broker deals with, likewise, are not-those lists do not constitute trade secrets as the evidence has indicated in this case. So the motion is granted as far as those individuals are concerned.
* * *
But the court here notes that the contact information, and the vendors, and the owners do not constitute trade secrets as a matter of law. So those claims are out."
Tr. 433-434.
{¶ 37} A business' customer list constitutes an intangible asset that is presumptively *1155 a trade secret when the owner of the list takes measures to prevent its disclosure in the ordinary course of business to persons other than those selected by the owner. State ex rel. Besser v. Ohio State Univ. , 89 Ohio St.3d 396, 732 N.E.2d 373 (2000). Appellant argues that its customer list complete with contact information constitutes a trade secret. In support of its argument, appellant points to a passage in the transcript in which appellant's owner, Pat Kapsulis, testified to the amount of effort that went in to cultivating his customer list in the hazardous waste brokerage business. (Tr. 262-263). Furthermore, Pat Kapsulis testified as to how appellant's business operates with this information. (Tr. 196-199).
{¶ 38} While appellant's brief and reply brief in this appeal do not address the element of reasonable steps appellant took to keep its customer list a secret pursuant to R.C. 1333.61(D)(2), the trial court admitted exhibit 1, the employee agreement between appellant and Johnston, at trial without objection. (Tr. 200, 403). The first paragraph of the agreement states "Employee agrees that he/she works for Poseidon Environmental Services, Inc. and that all business conducted per PESI remains at all times during and after work strictly confidential." It is foreseeable that Johnston would need access to appellant's customer lists and pricing information in order to perform her job. Therefore, a reasonable step in maintaining the secrecy of that information would be to have Johnston sign a confidentiality agreement, which was included in Johnston's employee agreement. Ultimately, appellant satisfied all of the elements of a trade secret concerning its customer list and the trial court erred when it ruled that said list did not constitute a trade secret.
{¶ 39} Moreover, even if appellees' argument is correct and the information in appellant's customer list is information that is publicly accessible, that does not disqualify it from being considered a trade secret. "When documents already in the public domain are combined to form a larger document, a trade secret may exist if the unified result would afford a party a competitive advantage." State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio Environmental Protection Agency , 88 Ohio St.3d 166, 724 N.E.2d 411 (2000). Appellant provided evidence of the effort required to compile its customer list. (Tr. 262-263). If appellant's customer list as compiled by appellant was to be disclosed, it would afford appellant's competitors a competitive advantage.
{¶ 40} Accordingly, appellant's second argument in this assignment of error has merit and is sustained. The balance of this assignment is without merit and overruled.
{¶ 41} Appellees filed a cross-appeal in which they state two assignments of error. Appellee's first assignment of error states:
DEFENSE MOTION FOR DISMISSAL AT THE CLOSE OF PLAINTIFF'S EVIDENCE AND MOTION FOR JUDGMENT NOV SHOULD HAVE BEEN GRANTED.
{¶ 42} Appellees argue that their Civ.R. 50 motion regarding all of appellant's misappropriation of trade secrets claims should have been granted because the job bidding process or job quote formulas used by appellant were not trade secrets. Appellees argue that there is testimony in the record from Pat Kapsulis, appellant's owner/operator, that suggests such formulas are purely subjective and do not constitute a formula under Ohio's Uniform Trade Secret Act.
{¶ 43} As previously stated above, a trade secret can include business information and does not necessarily have to be a formula as appellee suggests.
*1156 R.C. 1333.61(D). Therefore, the pricing information could still qualify as a trade secret.
{¶ 44} In order for the appellant's job bidding process or job quote formulas to be considered a trade secret, appellant must derive independent economic value from that information not being generally ascertainable by others through proper means and the information has to be the subject of reasonable steps under the circumstances to maintain its secrecy. R.C. 1333.61(D)(1)-(2). For the reasons stated previously addressing appellant's second assignment of error, the reasonable steps element of R.C. 1333.61(D)(2) is met because appellant had Johnston sign a confidentiality agreement.
{¶ 45} The issue then becomes whether appellant derived independent and economic value from the secrecy of its job bidding process or job quote formulas. During the trial, Perry Kapsulis testified as to how he taught Johnston the business appellant was engaged in which included: vendors, pricing information, profit margins, and the production of pricing quotes. (Tr. 196-199). Kapsulis was essentially testifying about how he derived independent and economic value from this information. Furthermore, appellees' own witness, Mr. Chirgott, testified that that type of information is not generally known to the public. (Tr. 530-532). Ultimately, the trial court did not err in ruling that pricing and bid quoting information was a trade secret.
{¶ 46} Accordingly, appellees' first assignment of error is without merit and overruled.
{¶ 47} Appellees' second assignment of error states:
THE JUDGE IMPROPERLY GRANTED AN INJUNCTION AGAINST PAMELA JOHNSTON.
{¶ 48} Appellees argue that the record is devoid of any evidence that Johnston's actions caused any harm to appellant. Without any evidence of Johnston harming appellant, appellees argue that the injunction was improperly granted. Additionally, appellees argue that the language of the injunction is ambiguous.
{¶ 49} Appellant argues that the record shows evidence of harm Johnston caused it such as: Johnston was working for appellant, Johnston was exposed to the client lists and pricing information of appellant, Johnston then terminated her employment with appellant and immediately began working for Nu Way, and ten out of 14 Nu Way customers in 2014 were customers of appellant's.
{¶ 50} The standard of review regarding the grant of an injunction and declaratory relief is whether the trial court abused its discretion. Varjaski v. Pearch , 7th Dist. No. 04 MA 235, 2006-Ohio-5268, 2006 WL 2846296, ¶ 9 citing Perkins v. Quaker City , 165 Ohio St. 120, 133 N.E.2d 595 (1956). Abuse of discretion implies that the court acted in an unreasonable, arbitrary, or unconscionable manner. State ex rel. Sartini v. Yost , 96 Ohio St. 3d 37, 2002-Ohio-3317, 770 N.E.2d 584.
{¶ 51} A party seeking an injunction must demonstrate two elements: the injunction is necessary to prevent irreparable harm and the party does not have an adequate remedy at law. Consol. Land Co. v. Capstone Holding Co. , 7th Dist. No. 02-BA-22, 2002-Ohio-7378, 2002 WL 34714571, ¶ 62 citing P & G v. Stoneham , 140 Ohio App.3d 260, 747 N.E.2d 268 (1st Dist. 2000). The party must prove these elements by clear and convincing evidence. Id. "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond reasonable doubt' in criminal cases, and which *1157 will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Id. citing Cross v. Ledford , 161 Ohio St. 469, 120 N.E.2d 118 (1954).
{¶ 52} In its judgment entry dated May 26, 2016, the trial court ordered Johnston to not be engaged in the industrial waste brokerage business within Mahoning County, Ohio for 18 months. Furthermore, Johnston was enjoined from communicating in any fashion with appellant's customers for six months.
{¶ 53} It is undisputed that Johnston was an employee of appellant's who then terminated her employment with appellant and then began working for Nu Way. It is also undisputed that Nu Way was in the same or in a substantially similar business to appellant. The jury returned a verdict that Johnston misappropriated appellant's trade secrets, specifically, information relating to appellant's job bidding process and bid quote formulas. Moreover, the only remedy available to appellant at law to prevent Johnston from using whatever trade secrets she acquired against appellant is to seek an injunction. Ultimately, the trial court did not abuse its discretion with regards to issuing an injunction against Johnston.
{¶ 54} Furthermore, exhibit 1, the employment agreement between appellant and Johnston, contains two provisions concerning Johnston's termination of her employment with appellant. The first states "Employee agrees that all new accounts obtained by employee are the property of PESI during employment and for 3 years after if employee is terminated or willfully quits." The second states "Employee agrees that if terminated or willfully quits PESI that if employed by another * * * waste management type firm in similarity of PESI that there will not be any solicitation of any accounts that are or were property of PESI for 3 years after last day of employment with PESI." The trial court's injunction appears to have fallen within the terms of the non-compete provisions of Johnston's employment agreement and extended beyond said provisions when it was found that Johnston was liable for misappropriating appellant's trade secrets. Ultimately, the trial court did not abuse its discretion by issuing an injunction against Johnston.
{¶ 55} According, appellees' second assignment of error is without merit and overruled.
{¶ 56} For the reasons stated above, the trial court's granting of appellees' Civ.R. 50 motion regarding appellant's customer lists not qualifying as a trade secret is hereby reversed and remanded for a new trial on that issue alone. The balance of the trial court's decision is hereby affirmed.
DeGenaro, J., concurs.
Robb, P.J., concurs.