[Cite as *Slenker v. St. Elizabeth Health Ctr.*, 2010-Ohio-6383.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| JUNE SLENKER, ET AL., | ) | |
| | ) | |
| PLAINTIFFS-APPELLANTS. | ) | |
| | ) | |
| VS. | ) | CASE NO. 10-MA-5 |
| | ) | |
| ST. ELIZABETH HEALTH CENTER, ET AL., | ) | OPINION |
| | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:   Civil Appeal from Court of Common Pleas of Mahoning County, Ohio Case No. 07CV2464

JUDGMENT:   Reversed and Remanded

APPEARANCES:
For Plaintiffs-Appellants   Attorney Robert D. Vizmeg
Anzellotti, Sperling, Pazol & Small Co., LPA
21 N. Wickliffe Circle
Youngstown, Ohio 44515

For Defendants-Appellees   Attorney Margo S. Meola
Comstock, Springer & Wilson Co., LPA
100 Federal Plaza East, Suite 926
Youngstown, Ohio 44503-1811

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: December 21, 2010

DONOFRIO, J.

{¶1} Plaintiff-appellant, June Slenker, appeals from a Mahoning County Common Pleas Court judgment awarding summary judgment in favor of defendant-appellee, St. Elizabeth Health Center, on her negligence claim.

{¶2} On December 31, 2005, appellant was transferred from North Side Hospital and admitted to St. Elizabeth Hospital after she fell down the basement stairs at her home. At the time of admission, appellant suffered from a fractured jaw.

{¶3} At the hospital, appellant was experiencing severe psychological and behavioral problems. Consequently, nurses requested and received an order for restraints at 2:30 a.m. on January 2, 2006. At 4:30 a.m., appellant attempted to climb out of bed.

{¶4} Later on January 2, appellant complained of shoulder and arm pain. An x-ray taken that afternoon revealed appellant had a fractured shoulder. Appellant's treating physician opined that appellant broke her shoulder sometime between when she was admitted on December 31, 2005 and when the x-ray was taken on January 2, 2006. Appellant underwent surgery to repair her shoulder.

{¶5} Appellant cannot recall how the injury to her shoulder occurred.

{¶6} Appellant and her husband, James Slenker, filed a complaint on July 9, 2007, asserting that appellant was injured as a direct and proximate result of appellee's negligent failure to provide her with adequate, appropriate, and timely treatment and nursing care. Appellant's husband also added a claim for loss of consortium.

{¶7} Appellee filed a motion for summary judgment on August 17, 2009, asserting that appellant could not establish that she actually fell, and if she could, she could not establish the circumstances surrounding the fall or that the fall was a result of nursing negligence. In support, appellee relied on appellant's deposition along with the depositions of two treating nurses. Appellant filed a response in opposition relying on various hospital records to support her allegations and later filed a supplemental response citing her surgeon's deposition.

{¶8} The matter was submitted to a magistrate who found that genuine

issues of material facts existed that precluded summary judgment. Therefore, he overruled appellee's motion.

**{¶9}** Appellee filed objections to the magistrate's judgment again arguing that appellant's entire case was based on speculation.

**{¶10}** The trial court found appellee's objections to be well-taken. It concluded appellant "probably broke her arm while a patient at St. Elizabeth Health Center, but no one knows when or how that occurred." Therefore, the trial court granted summary judgment in appellee's favor.

**{¶11}** Appellant filed a timely notice of appeal on January 12, 2010.

**{¶12}** Appellant raises a single assignment of error, which states:

**{¶13}** "THE TRIAL COURT ERRED WHEN GRANTING DEFENDANT-APPELLEE ST. ELIZABETH'S MOTION FOR SUMMARY JUDGMENT, AS PLAINTIFF-APPELLANT HAS PRESENTED SUFFICIENT COMPETENT EVIDENCE SHOWING GENUINE ISSUES OF MATERIAL FACTS."

**{¶14}** Appellant argues that genuine issues of material fact exist so that summary judgment was inappropriate. She first asserts the evidence is undisputed that she did not have a broken shoulder when she arrived at the hospital. Additionally, she points out that an order for restraints was obtained at 2:30 a.m. on January 2, 2006. Appellant argues that questions of fact surround when the restraints were actually implemented, citing nurse Kathryn Boyle's deposition. She claims that if the restraints had been properly used at 3:30 a.m. as records indicate, then she would not have been able to climb out of bed at 4:30 a.m. and grab for her IV as Boyle stated. Appellant further claims that the fact that she was able to climb out of bed and reach for her IV demonstrates that her shoulder was not yet broken. For this proposition she relies on Dr. Bruce Ziran's deposition wherein he opined that this would have been unlikely given her condition because appellant would not have been able to move her arm in the manner required.

**{¶15}** Based on the above, appellant contends that the court should have concluded that she fell and broke her shoulder between 4:30 a.m. and the next

morning when x-rays were ordered of her shoulder.

{¶16} Appellant next argues that her fall was documented by Dr. Ziran when he took the history of her injury. She stated that it was also documented in a psychiatry consult chart wherein she indicated that she fell out of bed at the hospital.

{¶17} Taking the above into consideration, appellant argues that one can reasonably conclude that she did not have a fractured shoulder when she was admitted to the hospital; during her stay an order for restraints was issued; if used properly, the restraints would have prevented her from getting out of bed; she fell while getting out of bed; the following day, a fracture was found in her shoulder. Thus, she contends that construing the facts in the light most favorable to her, there is sufficient evidence on which she can recover.

{¶18} In reviewing an award of summary judgment, appellate courts apply a de novo standard of review. *Cole v. Am. Industries & Resources Corp.* (1998), 128 Ohio App.3d 546, 552. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Flemming* (1994), 68 Ohio St.3d 509, 511. A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.* (1995), 104 Ohio App.3d 598, 603, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 247-48.

{¶19} Under the doctrine of respondeat superior, a hospital may be found liable for the negligent acts of its nurses that occurred while the nurses were engaged in performing the hospital's work. *Morris v. Children's Hospital Medical Ctr.* (1991), 73 Ohio App.3d 437, 441. A negligence claim requires the plaintiff to prove: (1) duty; (2) breach of duty; (3) causation; and (4) damages. *Anderson v. St. Francis-St. George Hosp., Inc.* (1996), 77 Ohio St.3d 82, 84.

{¶20} We must examine the depositions and other summary judgment

evidence relied on by the parties to determine if any genuine issues of material fact exist as to whether appellant's broken shoulder was a proximate result of appellee's negligent failure to provide her with adequate, appropriate, and timely treatment and nursing care.

**{¶21}** In her deposition, appellant stated that she had no memory at all of her time at St. Elizabeth. (June Slenker dep. 67). She also specifically stated that she had no recollection of falling out of bed or how she broke her shoulder. (June Slenker dep. 77).

**{¶22}** Additionally, the nurses who gave depositions had no personal recollection of appellant. Their testimony came from reviewing her charts. Also, the nurses had no recollection of whether appellant fell at the hospital or not.

**{¶23}** Kathryn Boyle was one of the nurses who cared for appellant during her hospital stay. By referring to appellant's chart, Boyle was able to see that appellant suffered from bipolar disorder. (Boyle dep. 32-34).

**{¶24}** Boyle was also able to give a timeline of appellant's condition from January 1 to January 2, 2006.

**{¶25}** Boyle stated that at 8:30 p.m. on January 1, she assessed appellant. Appellant was "anxious and irritable." (Boyle dep. 16). She also stated that at the time the condition of appellant's arms was "good" with "some weakness." (Boyle dep. 19-20).

**{¶26}** Boyle stated that she received the order permitting her to use restraints on appellant at 2:30 a.m. (Tr. 24-25).

**{¶27}** Boyle agreed that appellant's chart indicated that she applied restraints at 3:30 a.m. (Boyle dep. 24). However, she stated that she could not tell from the chart what type of restraint she used. (Boyle dep. 24). She stated that the restraint could be a four-point, soft handcuff type of restraint or a vest-type of restraint that is like a gown with bands that are tied to the bed. (Boyle dep. 27, 29). Additionally, the restraint could have been putting the four side rails up on the bed. (Boyle dep. 31).

**{¶28}** Boyle further stated that she did another assessment of appellant at

4:30 a.m. on January 2 and that appellant's arms were still "good" with "some weakness." (Boyle dep. 21). At that time, Boyle also noted that appellant was acting "hysterical," and that she was "agitated, restless and uncooperative." (Boyle dep. 22). Also at 4:30 a.m., Boyle noted that appellant was climbing out of bed, yelling, pulling off her arm wrap for her IV site, and was unsteady on her feet. (Boyle dep. 22, 27). Boyle explained that "climbing out of bed" meant that the patient was "throwing their arms or legs over the side of the bed or putting their leg in between the side rails or banging on the side rails" but did not imply that the patient had made it out of bed. (Boyle dep. 22-23).

{¶29} When asked how appellant could have been standing up at 4:30 a.m. when the chart indicated that restraints were used at 3:30 a.m., Boyle noted that appellant was permitted to get out of bed to use the bathroom. (Boyle dep. 30-31).

{¶30} Carla Alfano was another nurse who cared for appellant. Alfano indicated that sometimes when a patient is agitated and the nurse believes she might need to use restraints, the nurse obtains an order from the doctor that authorizes her to use restraints. (Alfano dep. 25-26). But she further stated that simply because a nurse obtains an order for restraints does not necessarily mean the nurse must use the restraints. (Alfano dep. 25-26). Alfano stated that a nurse would try other alternatives first such as talking to the patient, medication, using the four side rails on the bed, or calling the family to help. (Alfano dep. 25, 30). She stated that using restraints is the last resort. (Alfano dep. 25). Alfano stated that it is within the nurse's judgment to do what is necessary. (Alfano dep. 26).

{¶31} Appellant's husband James stated in his deposition that on the morning of January 2, 2006, when he came to visit appellant at approximately 9:00 a.m. she had a straitjacket-type vest on. (James Slenker dep. 45).

{¶32} Dr. Bruce Ziran was the surgeon who operated on appellant's broken shoulder. He examined the x-ray taken of appellant's chest when she was first admitted to the hospital on December 31, 2005. Dr. Ziran stated that the x-ray showed appellant's left shoulder and it was not broken at that time. (Ziran dep. 20-

21). Dr. Ziran also examined the x-ray taken of appellant's shoulder on January 2, 2006. He stated that it revealed a break. (Ziran dep. 21). Thus, Dr. Ziran concluded that the break occurred sometime between 11:32 p.m. on December 31, 2005 (the time of the first x-ray) and 4:13 p.m. on January 2, 2006 (the time of the second x-ray). (Ziran dep. 93-94).

**{¶33}** Dr. Ziran also stated that appellant's shoulder injury was caused by some type of direct trauma, such as a fall. (Ziran dep. 27-34, 66-67). And he stated it was highly unlikely that appellant would have been able to use her left arm to pull at her IV site, which she was doing at 4:30 a.m. on January 2, if her shoulder was broken at that time. (Ziran dep. 53-54).

**{¶34}** Given Dr. Ziran's statements, it is clear that appellant broke her shoulder sometime between December 31, 2005 and January 2, 2006. It is further reasonable to conclude that she broke it sometime after 4:30 a.m. on January 2. Since appellant was in the hospital during this entire time, it is likewise reasonable to conclude that she broke her shoulder while in the hospital.

**{¶35}** Furthermore, while there is no actual documentation of a fall nor is there a witness who can testify that they saw appellant fall, there is still some evidence, albeit second-hand, that appellant fell at the hospital.

**{¶36}** Dr. Ziran stated that a resident by the name of Dr. Scott Rainey took appellant's history as part of a consult before Dr. Ziran saw her. (Ziran dep. 13-14). Dr. Rainey's consult notes indicated that appellant stated she fell and broke her shoulder while at the hospital. (Ziran dep. 16-17). And while Dr. Ziran had no specific recollection of reviewing appellant's history with her, he stated that it his standard operating procedure to in fact review the patient's history with them in order to confirm it. (Ziran dep. 17-18).

**{¶37}** Based on the above, there is enough evidence to create a genuine issue of material fact as to whether appellant fell at the hospital. And there is clearly evidence that appellant suffered a broken left shoulder while at the hospital.

**{¶38}** But there must also be a genuine issue of material fact surrounding

whether some negligence by the nursing staff proximately caused appellant's injury. There is enough evidence to defeat summary judgment on this point. From Boyle's and Alfano's statements, at least one nurse opined that there was a strong possibility that appellant, who was known to nurses to be bipolar, might need to be restrained in the early hours of January 2. That is evidenced from the physician's order giving the nurses authority to implement restraints at 2:30 a.m. Appellant's chart indicated that restraints were applied at 3:30 a.m. However, it is unclear what type of restraint was implemented. Additionally, according to Boyle, at 4:30 a.m. appellant was hysterical, agitated, restless, and uncooperative. Appellant was also climbing out of bed, yelling, pulling off her arm wrap for her IV site, and was unsteady on her feet at this time. And according to Alfano, it was within the nurses' judgment to determine when to implement an order of restraints. Thus, construing this evidence in the light most favorable to appellant, one could conclude that the nurses were negligent in one of three ways: not restraining appellant when they should have, not restraining her properly, or not properly assisting her out of bed.

{¶39} Lastly, proximate cause is generally an issue for the jury because it involves a question of fact. *Morris v. Morris,* 9th Dist. No. 21350, 2003-Ohio-3510, at ¶21. Here it is unclear exactly what caused appellant to fall and injure her shoulder. Construing the evidence in appellant's favor as we are required to do reveals that appellant did not have a broken shoulder when she arrived at the hospital on December 31, the nurses charged with appellant's care felt it was necessary to get a restraint order for appellant at 2:30 a.m. on January 2, appellant was hysterical and climbing out of bed at 4:30 a.m., appellant was in a straitjacket-type restraint at 9:00 a.m., appellant's shoulder revealed a fracture at 4:13 p.m. Whether some type of nursing negligence was the proximate cause of appellant's fractured shoulder is a question best suited for a jury.

{¶40} Based on the above, the trial court erred in overruling the magistrate's decision and granting summary judgment to appellee. Accordingly, appellant's sole assignment of error has merit.

**{¶41}** For the reasons stated above, the trial court's judgment is hereby reversed and the matter is remanded for further proceedings.

Vukovich, P.J., concurs.

DeGenaro, J., dissents.