[Cite as *Walker v. Marra*, 2018-Ohio-1282.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STEVEN L. WALKER, EXECUTOR OF THE ESTATE OF ABIGAIL WALKER, DECEASED, | ) ) ) | |
| | ) | CASE NO. 17 CO 0004 |
| PLAINTIFF-APPELLANT, | ) ) | |
| V. | ) | OPINION |
| | ) ) | |
| ROBERT F. MARRA II ET AL., | ) ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:    Civil Appeal from Court of Common Pleas of Columbiana County, Ohio Case No. 2015-CV-190

JUDGMENT:    Affirmed.

APPEARANCES:
For Plaintiff-Appellant    Attorney Brian Kopp
Attorney Justin Markota
6630 Seville Drive
Canfield, Ohio 44406

For Defendants-Appellees    Attorney Kirk Roman
50 South Main Street, Suite 502
Akron, Ohio 44308

Attorney John Pfau
P.O. Box 9070
Youngstown, Ohio 44513

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Carol Ann Robb

Dated: March 30, 2018

DONOFRIO, J.

{¶1}   Plaintiff-appellant, Steven Walker, individually and as the executor of the estate of Abigail Walker, appeals the Columbiana County Court of Common Pleas judgment granting summary judgment on his negligence and negligent entrustment claims in favor of defendants-appellees, Robert F. Marra I (Robert I) and Peter Marra (Peter).

{¶2}   This action centers around the death of Abigail Walker (Abigail). Abigail was the biological daughter of appellant and Shannon Marra (Shannon). In 2007, approximately two years after appellant and Shannon divorced, Shannon married Robert Marra II (Robert II) which made him Abigail's step-father. Shannon and Abigail moved into Robert II's home in Summitville, Ohio.  Robert II's home is adjacent to his father, Robert I's home, and to his grandfather, Peter's home.

{¶3}   The Marras had a Honda Rincon all-terrain vehicle (ATV). At all times relevant, the ATV was owned by Robert I and its primary purpose was to assist Peter with transportation around the Marras' properties. The ATV was stored on Peter's property in his garage. Deposition testimony revealed that various members of the Marra family were teaching Abigail to operate the ATV and that Abigail had received approximately one year of instruction in the operation of the ATV.

{¶4}   On April 8, 2013 at approximately 6:00 p.m., Abigail asked Robert II for permission to drive the ATV. Abigail was thirteen years old at this time. Robert II originally did not give Abigail said permission. Eventually, Robert II changed his mind and gave Abigail permission to drive the ATV. Abigail then approached Peter and requested the keys for the ATV. Peter contacted Robert II to confirm that Abigail did have permission to drive the ATV. Once Robert II confirmed Abigail had permission, Peter gave Abigail the key to the ATV.

{¶5}   At approximately 8:00 p.m., Robert II went looking for Abigail as she had not checked in for some time. Robert II found Abigail underneath the ATV which had flipped over. Abigail suffocated and died as a result of the ATV being on top of her.

{¶6}   Appellant was subsequently appointed by the Columbiana County

Probate Court as the executor of Abigail's estate. Appellant brought this action against Robert II, Shannon, Peter, and American Honda Motor Co., Inc. alleging wrongful death and survivorship claims on theories of negligence, negligent entrustment, and product liability. Appellant eventually dismissed American Honda Motor Co., Inc. from this action. Appellant also filed a First Amended Complaint which maintained the wrongful death and survivorship claims against Robert II, Shannon, and Peter but also alleged those claims against Robert I.

{¶7} After discovery was completed, Robert I and Peter filed motions for summary judgment. Peter's motion for summary judgment was premised on the fact that he did not own the ATV and could not have entrusted it to Abigail. Robert I's motion for summary judgment was premised on the fact that no witnesses could testify how the ATV flipped over which meant that no one could testify as to any negligence on the part of Abigail. With no facts establishing Abigail's negligence, Robert I contended that there could be no negligent entrustment claim.

{¶8} Appellant filed memorandums in opposition to the respective summary judgment motions. Appellant primarily argued that, due to Abigail's age, all appellees knew or should have known that Abigail was incompetent to operate an ATV which was a sufficient basis for his various negligence claims.

{¶9} On January 23, 2017, the trial court granted Peter's and Robert I's motions for summary judgment and dismissed all claims against them. On February 6, 2017, appellant filed a motion for voluntary dismissal regarding the remaining defendants (Shannon and Robert II). Appellant then timely filed this appeal on February 14, 2017. Appellant now raises three assignments of error.

{¶10} Appellant's first assignment of error states:

THE TRIAL COURT ERRED IN GRANTING APPELLEES'
MOTIONS FOR SUMMARY JUDGMENT IN THAT GENUINE ISSUES
OF MATERIAL FACT EXIST AS TO THE NEGLIGENT
ENTRUSTMENT OF THE ATV TO THE DECEDENT, AND THE
APPELLEES' KNOWLEDGE OF DECEDENT'S INCOMPETENCE IN

HER OPERATION OF THE SAME.

**{¶11}** Appellant makes two arguments regarding this assignment of error. First, appellant argues that liability in negligent entrustment claims extends beyond the owner to a non-owner who is in control of the instrumentality. Second, appellant argues that both Peter and Robert I knew or should have known that Abigail was incompetent to operate the ATV based on her age and the warning signs that were affixed to the ATV itself.

**{¶12}** An appellate court reviews a trial court's summary judgment decision de novo, applying the same standard used by the trial court. *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, ¶ 5. A motion for summary judgment is properly granted if the court, upon viewing the evidence in a light most favorable to the nonmoving party, determines that: (1) there are no genuine issues as to any material facts; (2) the movant is entitled to judgment as a matter of law, and (3) the evidence is such that reasonable minds can come to but one conclusion and that conclusion is adverse to the opposing party. Civ. R. 56(C); *Byrd v. Smith*, 110 Ohio St. 3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 10.

**{¶13}** "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). The trial court's decision must be based upon "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action." Civ. R. 56(C). The nonmoving party has the reciprocal burden of specificity and cannot rest on the mere allegations or denials in the pleadings. *Id.* at 293.

**{¶14}** In *Dresher*, the Ohio Supreme Court held that a party who moves for summary judgment need not support its motion with affidavits provided that the party does not bear the burden of proof on the issues contained in the motion. *Dresher* at 277. Further, there is no requirement in Civ.R. 56 that any party submit affidavits to

support a motion for summary judgment. *See, e.g.,* Civ.R. 56(A) and (B). *Id.* However, there is a requirement that a moving party, in support of a summary judgment motion, specifically point to something in the record that comports with the evidentiary materials set forth in Civ.R. 56(C). *Id.*

**{¶15}** Summary judgment is appropriate when there is no genuine issue as to any material fact. A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.,* 104 Ohio App.3d, 598, 603, 662 N.E.2d 1088 (8th Dist. 1995), citing *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**{¶16}** In a negligent entrustment claim, "[t]he owner of a motor vehicle may be held liable for an injury to a third person upon the ground of negligence if the owner knowingly, either through actual knowledge or through knowledge implied from known facts and circumstances, entrusts its operation to an inexperienced or incompetent operator whose negligent operation results in the injury." *Gulla v. Straus*, 154 Ohio St. 193, 93 N.E.2d 662 (1950), paragraph three of the syllabus.

**{¶17}** As the elements in *Gulla* suggest, a claim of negligent entrustment requires evidence that the operator acted negligently and that said negligence resulted in injury. While appellant makes numerous arguments in this assignment of error, this particular element is dispositive as there is no evidence in the record that Abigail operated the ATV in a negligent manner.

**{¶18}** Appellant concedes the point that there were no witnesses to see exactly why or how the ATV managed to flip over and cause Abigail's death. (Brief of Appellant, 17). With no witnesses to testify as to how the ATV flipped over, there is no evidence Abigail acted negligently.

**{¶19}** "It is well settled in Ohio that no presumption or inference of negligence arises from the bare happening of an accident or from the mere fact that an injury was sustained." *Green v. Castronova,* 9 Ohio App.2d 156, 161, 223 N.E.2d 641 (7th Dist. 1966) citing *Parras v. Standard Oil Co.*, 160 Ohio St. 315, 116 N.E.2d 300 (1953). With no evidence that Abigail acted negligently, the trial court's judgment

granting Peter's and Robert I's motions for summary judgment on appellant's negligent entrustment claim was proper.

**{¶20}** Accordingly, appellant's first assignment of error lacks merit and is overruled.

**{¶21}** Appellant's second assignment of error states:

> THE TRIAL COURT ERRED IN GRANTING APPELLEES' MOTIONS FOR SUMMARY JUDGMENT ON THE CLAIMS OF GENERAL NEGLIGENCE.

**{¶22}** Appellant argues that even though Peter and Robert I were not the parents nor in loco parentis with Abigail, they both still owed Abigail a duty, as the owner and the person in control of the ATV, of reasonable care under the circumstances. Appellant further argues that because the risk of the ATV flipping over while Abigail was riding it was foreseeable, Peter and Robert I did in fact owe Abigail a duty of reasonable care.

**{¶23}** As this assignment of error also concerns the trial court's judgment granting summary judgment in favor of Peter and Robert I, it is subject to the same standard of review used in addressing appellant's first assignment of error.

**{¶24}** "The elements of a negligence claim are: (1) the existence of a duty owed by the defendant to the plaintiff; (2) breach of that duty; (3) harm to the plaintiff caused by the breach; and (4) damages." *Lagowski v. Shelly & Sands, Inc.*, 7th Dist. No. 13 BE 21, 2015-Ohio-2685 ¶ 7 citing *Anderson v. St. Francis-St. George Hosp., Inc.*, 77 Ohio St.3d 82, 84, 671 N.E.2d 225 (1996). "Whether the defendant owes a duty to the plaintiff presents a legal question that depends upon the foreseeability of the plaintiff's injuries." *Id.* citing *Menifee v. Ohio Welding Products*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984). "An injury is foreseeable if a reasonably prudent person would have anticipated that any injury was likely to result from the performance or nonperformance of an act." *Id.*

**{¶25}** In its journal entry dated January 23, 2017, the trial court granted

summary judgment to Peter and Robert I on appellant's general negligence claims on the basis that because neither Peter nor Robert I were Abigail's parents or stood in loco parentis to Abigail, they did not owe Abigail any duty.

**{¶26}** All parties agree that neither Peter nor Robert I were a parent to Abigail, they were a step-great-grandfather and step-grandfather respectively. As for the in loco parentis argument, "[a] person is said to stand in loco parentis to a child not his own whom he has taken into his custody as a member of his family to rear as his own child." *Ray v. Ray*, 7th Dist. No. 89-B-4, 1989 WL 150825. As Shannon and Robert II were taking care of Abigail on the date at issue, it cannot be said that Peter or Robert I stood in loco parentis to Abigail.

**{¶27}** Peter and Robert I both argue that the Twelfth District's decision in *Paxton v. Ruff, Inc.*, 12th Dist. No. CA97-04-089, 1998 WL 869, *appeal not accepted*, 81 Ohio St.3d 1526, 692 N.E.2d 1027 (1998), provides guidance on this issue. In *Paxton*, Michael Burns was the president and sole shareholder of Glenn Ruff, Inc. Michael Burns used corporate funds to purchase an ATV which was used for both professional and personal purposes. *Id.* at *1. Although the ATV was owned by the corporation, Michael Burns kept it on his personal property. *Id.*

**{¶28}** Michael Burns taught his daughter Tracey how to operate the ATV and instructed her to always wear a helmet and always ask for permission before operating it. *Id.* Additionally, Michael also instructed his daughter that no other people were to ride the ATV. *Id.* One day when Michael was not home, Tracey invited two male friends over: Billy Paxton and Nicholas Lerch. *Id.* Tracey, Billy, and Nicholas were all 14 years old at the time. *Id.* Tracey retrieved the keys to the ATV and showed Billy and Nicholas how to operate it. *Id.* Billy and Nicholas then both took turns operating the ATV. *Id.* While Nicholas was operating the ATV, Billy was a passenger and Nicholas lost control of the ATV which resulted in Billy's death. *Id.* at *2.

**{¶29}** Billy's mother Vickie brought a wrongful death action against Glenn Ruff, Inc., Michael Burns, Tracey Burns, Corneilia Burns (Tracey's mother), Nicholas

Lerch, and Nicholas' mother Beverly Brummel. *Id.* at *1. The trial court awarded summary judgment to all defendants. *Id.*

**{¶30}** In affirming the trial court's judgment granting summary judgment to Michael and Corneilia, the Twelfth District held that due to the strict instructions Michael gave to Tracey, it could not be said that Michael gave Tracey a dangerous instrument nor provided Nicholas and Billy with a dangerous instrument. *Id.* at *3. Nor could it be said that Michael sanctioned the use of the ATV by Tracey, Nicholas, or Billy. *Id.* Finally, the Twelfth District held that the accident was not a probable or foreseeable consequence of any parental negligence. *Id.*

**{¶31}** We find *Paxton* instructive. The evidence in the record shows that neither Peter nor Robert I gave Abigail permission to operate the ATV. Abigail received permission from Robert II. Peter called Robert II to confirm that Abigail had permission as well. Since neither Peter nor Robert I had any input on Abigail's permission to operate the ATV, it cannot be said that they sanctioned Abigail's use of the ATV.

**{¶32}** The evidence in the record also shows that Abigail was competent enough to operate the ATV. Deposition testimony revealed that Abigail was trained in how to operate the ATV by Robert I and Robert II. (Dep. of Robert I 19). This training included: inspection of the ATV for any problems, how to start the ATV, how to apply the brakes, how to properly steer the ATV, and general safety tips for ATV operation. (Dep. of Robert I 20-22). Abigail's training in operating the ATV lasted approximately one year. (Dep. of Robert I 21-22).

**{¶33}** The only evidence that appellant relies on that indicated Abigail was incompetent to operate the ATV was the fact that Abigail was 13 years old at the time and the ATV had a warning plate on it which read "[o]perating this ATV if you are under the age of 16 increases your chance of severe injury or death. Never operate this ATV if you are under age 16." (Dep. of Robert I 23, Exhibit B). But this evidence does not directly show that Abigail herself was incompetent to drive the ATV. The evidence showed that Abigail was trained in how to operate the ATV. Because

Abigail was trained in the operation of the ATV, it was not a probable or foreseeable consequence that Abigail would injure herself while driving the ATV. Moreover, the evidence in the record shows that neither Peter nor Robert I gave Abigail permission to operate the ATV.

{¶34} Accordingly, appellant's second assignment of error lacks merit and is overruled.

{¶35} Appellant's third assignment of error states:

THE TRIAL COURT ERRED IN FINDING THAT EVIDENCE OF DECEDENT'S NEGLIGENCE IS A CONDITION PRECEDENT OF FINDING NEGLIGENCE ON THE PART OF APPELLEES BECAUSE THE ATV HAS AN INHERENT RISK OF HARM.

{¶36} Appellant argues that the trial court erred when it ruled that proof of Abigail's negligence was a condition precedent to all of his claims. However, as discussed previously in addressing appellant's first assignment of error, negligent entrustment claims require a showing that the entrustee acted negligently. Because there was no evidence of negligence on the part of Abigail, the trial court could not infer or presume that Abigail acted in a negligent manner. *Green v. Castronova,* 9 Ohio App.2d 156.

{¶37} While negligence on the part of Abigail would not be a condition precedent to any negligence claim against Peter and Robert I, for the reasons previously stated addressing appellant's second assignment of error, the trial court's judgment granting summary judgment in favor of Peter and Robert I on appellant's negligence claims was proper.

{¶38} Accordingly, appellant's third assignment of error lacks merit and is overruled.

{¶39} Based on the foregoing, the trial court's judgment is hereby affirmed.

Waite, J., Concurs

Robb, P., J., Concurs